## AARON REUCK v. JOHN McGREGOR.

1. When, in actions of tort, the damages given by the jury are so exorbitantly high, and so far exceed the injury sustained, as to make it manifest to the court that the minds of the jury have been controlled by passion, partiality, prejudice, or intemperance, the verdict should be set aside.
2. When damages are claimed for an illegal arrest, the causes of the arrest, and the facts and circumstances connected with it, are to be taken into consideration.
3. A private person is justified in making an arrest where a felony has actually been committed, and there is probable ground to fairly suspect the person to be guilty.
4. An arrest which will be held justifiable, when made regularly by a proper officer, will not be justified if made by the party complaining, and made irregularly. The party will be liable in such case to pay for damages according to the circumstances, mitigated by the reasonable or probable causes that induced the arrest.

---

The action was in trespass, for assault and false imprisonment.

Upon the trial at the Essex Circuit, the jury gave a verdict against the defendant for the sum of three thousand dollars.

On the coming in of the parties, the court, on application

of the defendant, granted a rule upon the plaintiff to show cause why the verdict should not be set aside, chiefly on the ground of excessive damages.

The rule was argued before the CHIEF JUSTICE, and Justices ELMER, VREDENBURGH, and BEDLE.

For the rule, *Theodore Runyon* and *C. Parker.*

Contra, *John W. Taylor* and *Attorney-General Frelinghuysen.*

The opinion of the court was delivered by

BEDLE, J. The chief ground upon which a new trial is asked in this case is, that the damages are excessive. In these actions of tort, the court has, unquestionably, the power to grant a new trial for that reason. It is a delicate, yet necessary power, and should be exercised whenever it appears that the damages are so exorbitantly high, and so far exceed the injury sustained, as to make it manifest to the court that the minds of the jury have been controlled by passion, partiality, prejudice, or intemperance. *Gilbert* v. *Burthenshaw, Cowper* 230 ; *Potts* v. *Imlay,* 1 *South.* 338 ; *Taylor* v. *Vanderveer,* 4 *Harr.* 22 ; *McConnell* v. *Hampton,* 12 *Johns.* 234.

In applying this rule, each case must rest upon its own peculiar circumstances. The case on the part of the plaintiff, shows that he was a resident of Newark, and engaged, amongst other things, in furnishing silver platers with remnants of cloth, for polishing purposes ; that he went to the clothing store of the defendant, in Newark, and offered to sell him a piece of felt cloth of about three yards, which he had purchased in New York for a Mr. Wheeler, for polishing purposes, and which Mr. Wheeler did not take ; that he laid it upon the counter at defendant's store, and told him he would sell it to him reasonably, for him to make up ; that the defendant turned up the end of it, examined it, and said that he thought he had seen that piece before;

that the plaintiff then told him he was mistaken—that he had purchased it in New York. The defendant then laid his yardstick upon the cloth, and said there were not three yards. The plaintiff then said he had purchased it for three yards, and paid for three yards. The defendant said that cloth had been in his store. The plaintiff said to defendant, it was strange how that cloth could get out of his store and get into New York, and be cut off a piece there. The defendant then said that cloth was not purchased in New York, but was stolen out of his store. Other words then followed, both becoming a little angry, the plaintiff, by his remarks, insisting that he had bought it, the cloth, in New York, and was cut off a piece there; and the defendant insisting that it was not so; and that the cloth had been stolen out of his store. The plaintiff then left, and went to Brown & Osborn's clothing store, opposite, but before leaving, remarked to the defendant that "if I was as sure as you are that it was my cloth, and was stolen out of my store, I would follow it up, and you can follow it up as soon as you please." Very soon afterwards, the defendant sent a young man to Brown & Osborn's, who told the plaintiff that the defendant wanted to see him. The plaintiff then went back to the defendant's store, and the defendant then said that he was not satisfied about that cloth, and asked the plaintiff to go to the police office with him. The plaintiff told him he had no business there, and nothing to call him there. The defendant said, "if you don't go, I'll send for an officer, and make you go." The defendant also said, "where is that cloth?" The plaintiff said, "it is up town." The defendant said, "send for that cloth, or I'll send an officer for it." The plaintiff then requested a young man, by the name of Irwin, who had come over from Brown & Osborn's to the defendant's after the plaintiff had returned there, to go out and get the cloth and bring it to the police station. Before Irwin left, a police officer came in with the young man, who had been sent by defendant to Brown & Osborn's. The plaintiff testifies that some one pointed him out to the officer, and

that the officer walked towards him. Irwin swears that the defendant said, "this is the man—take him—there he is," pointing to Reuck. The policeman then said, "I want you to go along with me." Reuck hesitated. The officer said, "if you don't go, I'll take you." The plaintiff then went with McGregor to the police office, the officer walking behind. They reached the police office a little after twelve o'clock, noon. The police justice was not in, and Reuck was informed by the clerk of police, that the judge would not be there till two o'clock. The plaintiff then said to defendant, "I suppose I may go home and get my dinner?" Defendant said, "yes, you can go, I suppose." The plaintiff then started for the door, and as he got near it, the defendant said, "you can't go, for there may be more goods where that came from." The plaintiff then remained in charge of the officer until the justice came, the defendant, in the meantime, having left. The cloth was taken to the police station by Irwin, and upon the return of the justice, McGregor made complaint under oath, that the cloth was stolen out of his possession, and showing the possession of it by Reuck. Thereupon, the plaintiff gave bail to appear in about a week before the justice, to answer the complaint, at which time a hearing was had, witnesses were produced upon both sides, and the plaintiff was discharged. The plaintiff also showed that he was a member of High street church, in Newark, and had been superintendent of a Sabbath school in Wickliffe street for fifteen years. But it does not appear from the evidence that McGregor knew these facts. These are about the leading facts, as shown by the plaintiff. The verdict of the jury was for three thousand dollars.

The defence was mainly upon the question of damages; the defendant insisting that there were strong probable grounds for the arrest, and that he was liable only by reason of the irregularity of causing the arrest before the complaint was actually made to the justice.

It is well, before looking into the question of probable

cause, to state the general powers of the officer and the citizen in arrests in cases of larceny or other felonies.

A peace officer may justify an arrest upon a reasonable charge of felony, although it should turn out that no felony had been committed.

A private person is justified in arresting, when a felony has actually been committed, and there is probable ground to fairly suspect the person guilty, or, as it is well expressed by Tindal, C. J., in the case of *Allen* v. *Wright*, 8 *Carr. & Payne* 522, where it appears:

"1. That a felony had actually been committed.

"2. That the circumstances were such that you yourselves, or any reasonable person, acting without passion and prejudice, would have fairly suspected the plaintiff of being the person who did it."

To justify an arrest by a private person, then, it should appear that a felony had been committed, and that there was probable or reasonable ground to fairly suspect the person to be guilty. The liability of the defendant, in this case as it now stands, to pay some damages, is not questioned; but the question for our consideration now is, were the circumstances and facts connected with the arrest and its causes, so reasonable, from the undisputed testimony on either side, as to make the damages found excessive, according to the rule as already laid down. The arrest was made on the 23d day of January, 1865. In the month of November previous, the cutter of the defendant called his attention to a piece of dark-blue beaver cloth, with holes in it, marked with chalk, to show where they were. The attention of the defendant was called to it, because the cutter could not get the garment designed to be cut, out of it. The piece was then laid aside, and the defendant swears that he never found it, nor any traces of it, but that he had not missed it till the plaintiff came to his store, when he recognized the piece brought by the defendant, as belonging to him. About these two pieces of cloth (for it satisfactorily appears from the evidence that there were two pieces,) there

were several remarkable coincidences, and from them the piece of Reuck was thought to be the piece of McGregor, by himself, his cutter, and a tailor of the defendant, all of whom were sworn in this case, and also before the police justice. The length of each piece was about the same; each had holes in it, with chalk marks to show where they were. The cutter says that those upon Reuck's piece were very much like his, and he thought they were his. In Reuck's piece there was a nick at one end, which he swears was caused by a person to whom it was shown to try, pulling it and it tore, and that he cut that off and made the nick. The cloth of McGregor, the cutter testified, had also a piece cut in the corner, where it was usual to cut for samples. Each was a dark-blue pilot cloth, and the quality and warp of each were recognized by the witnesses as the same. The cutter swore that he recognized Reuck's piece, and supposed it to be a piece of goods that came from McGregor's. The tailor swore that he thought he had seen it at McGregor's, and that it belonged to McGregor, and that he had handled it often, and McGregor, also, as it satisfactorily appears from the evidence, believed the cloth to be his. In addition to that, McGregor testifies that he had no personal acquaintance with Reuck, only knowing him as a resident of Newark, and by sight, and not his character; and Reuck testifies that he knew defendant, but did not recollect of offering to him articles except once before, and never offered him any cloth before. Taking these facts together, which appear to be uncontroverted, as well as the other features of the case, to which it is unnecessary to refer specially, among them being the undesirableness of the remnant as to size, we cannot fail to pronounce this a very striking instance of mistaken identity, without any evil design against the plaintiff, and founded upon such reasonable grounds of belief as would be sufficient, at least, to relieve the defendant from any charge of malicious prosecution, had he made complaint to the magistrate before the arrest, and quite sufficient to authorize the defendant to

arrest the plaintiff, without warrant, if the proof that a felony had been committed had been complete. The proof is not clear that a larceny of McGregor's cloth had been committed, yet he never found it, and there is nothing in the case to induce us to think that he feigned it, or that he did not believe it, but, on the contrary, the circumstances would reasonably create the belief in the mind of McGregor that his cloth had been stolen. The defendant was entitled to the benefit of these considerations upon the trial. Besides, if the defendant had made the same complaint before the arrest, that he made when the justice returned, instead of getting the officer to take the plaintiff to the police office first, and then making the complaint, it is difficult to see how the defendant could have been held liable at all. His liability, then, is in that irregularity of proceedings, and the manner of the arrest, and he should be held to pay reasonable and fair damages, according to the circumstances, mitigated by the reasonable or probable causes that induced it. If, upon the strength of the facts as proved, the officer had made the arrest upon his own responsibility, it can hardly be contended that he would be liable, and although the plaintiff, for procuring the arrest is liable to answer damages, by reason of his irregular proceeding, yet the reasonableness of the causes of it, required of the jury a very careful investigation in estimating the damages. The verdict was extravagantly disproportioned to the injury, and cannot be reconciled with that dispassionate, unprejudiced, impartial, or temperate consideration that the case was entitled to. Under the rule as laid down, the damages are excessive, and for that reason there should be a new trial.

It was also objected, that the court refused to allow the defendant to prove "that Captain Connelly, the captain of the police, told him that Irwin, who was there with Reuck, and had the cloth, had himself been arrested for, or suspected by the police of, receiving stolen goods, knowing them to be stolen." The plaintiff had shown that while at the police station, the defendant said to him, "You can't go (to dinner)

for there may be more goods where that came from." The plaintiff also swore that the defendant asked him there, if he had any objection to the officer searching his premises. McGregor swears that Reuck said "he supposed he could go to dinner. I said certainly. Captain Connelly, of the police, spoke to me. I then told Reuck he had better wait a little. From what Captain Connelly said, I withdrew my consent." The object of that offer was to explain the motive of the defendant, and his reason in not consenting for the plaintiff to go to dinner, and also in asking if he had any objection to the officer searching his premises. This evidence was competent upon the question of damages, but how far, by itself, the rejection of it would control the court, upon the question of a new trial, it is not necessary now to state, the reason of excessiveness of damages being sufficient to allow it.

The other objection, as to the admission of the endorsement of "P. Larceny," by the justice, upon the back of the complaint, is not good.

Let the verdict be set aside, and a new trial be granted.