FORTUGNO REALTY COMPANY, A CORPORATION OF NEW JERSEY, PLAINTIFF-RESPONDENT AND CROSS-APPELLANT, v. SCHIAVONE-BONOMO CORPORATION, A CORPORATION OF NEW JERSEY, DEFENDANT-APPELLANT AND CROSS-RESPONDENT, AND HERMAN T. STICHMAN, TRUSTEE OF HUDSON & MANHATTAN RAILROAD COMPANY, A CORPORATION OF NEW JERSEY IN BANKRUPTCY, DEFENDANT-CROSS-RESPONDENT.

Argued December 3, 1962—Decided March 4, 1963.

384

*Mr. H. Curtis Meanor* argued the cause for defendant-appellant and cross-respondent, Schiavone-Bonomo Corporation and defendant-cross-respondent, Herman T. Stichman, trustee of Hudson & Manhattan Railroad Company (*Messrs. Lamb, Langan & Blake,* attorneys; *Mr. Arthur J. Blake* and *Mr. H. Curtis Meanor,* of counsel).

*Mr. Adrian M. Unger* argued the cause for plaintiff-respondent and cross-appellant, Fortugno Realty Company (*Messrs. Milton M. and Adrian M. Unger,* attorneys; *Mr. Adrian M. Unger* and *Mr. Joseph Ginsburg,* of counsel).

The opinion of the court was delivered by

HANEMAN, J. Plaintiff filed suit seeking recovery for damage caused to its platform scale by defendants in connection with the weighing of a truck owned by Schiavone-Bonomo Corporation (Schiavone) and loaded with scrap metal being purchased by Schiavone from Herman T. Stichman, Trustee of Hudson & Manhattan Railroad Company (H. & M.). The suit sounded in negligence.

During the trial, plaintiff "offered into evidence" *N. J. S. A.* 39:3–84, which, at the time of the incident in issue, read in pertinent part:

"Subject to the provisions of section 39:3–82 and the axle weight limitations of this section, no commercial motor vehicle, tractor, trailer or semitrailer shall be operated on any highway in this State having

a combined weight of vehicle and load of more than (a) 30,000 pounds in the case of a 2-axle 4-wheeled vehicle, (b) 40,000 pounds in the case of a 3-axle 6-wheeled vehicle, (c) 60,000 pounds in the case of a tractor and semitrailer combination, and (d) 60,000 pounds in the case of a truck and trailer combination.

The gross weight imposed on the highway by the wheels of any 1 axle of a vehicle shall not exceed 22,400 pounds."

The trial court sustained defendants' objection to the "exhibit." At the close of plaintiff's case, defendants moved for involuntary dismissal. The trial court reserved decision. Defendants then rested without submission of proof and moved for judgment, which the court granted. On plaintiff's appeal the Appellate Division unanimously affirmed as to H. & M., but reversed as to Schiavone and remanded for trial on the issue of its alleged negligence (one judge dissenting). *Forlugno Realty Co. v. Schiavone-Bonomo Corp.*, 75 *N. J. Super.* 23 (*App. Div.* 1962). Schiavone appeals as a matter of right. *R. R.* 1:2–1(b). Plaintiff, without seeking certification, cross-appeals the affirmance of the judgment in favor of H. & M., and the direction of the Appellate Division that costs should abide the outcome of the event of a new trial.

The issues before this court encompass (1) the right of plaintiff to cross-appeal against H. & M. without special leave; (2) the propriety of the trial court's refusal to recognize the relevancy of *N. J. S. A.* 39:3–84; (3) the propriety of the Appellate Division's reversal of the judgment in favor of Schiavone; (4) the propriety of the Appellate Division's affirmance of the judgment in favor of H. & M., and (5) the failure of the Appellate Division to award costs to plaintiff.

I.

At the outset, we shall consider the contention of H. & M. that plaintiff cannot appeal as a matter of right.

Schiavone appeals against plaintiff as of right, because of the dissenting opinion in the Appellate Division. *R. R.* 1:2–1(b). Plaintiff, the sole respondent in that appeal, cross-appeals against H. & M., codefendant with Schiavone, without

prior grant of a petition for certification. The cross-appeal is from that portion of the judgment favorable to H. & M., entered pursuant to a unanimous decision of the Appellate Division. The narrow question is: Where one of several parties to a civil action appeals to this court as a matter of right, may the respondent cross-appeal against any other party to the litigation as a matter of right?

This problem invokes the interrelation of *R. R.* 1:2–1(b), which reads,

"Appeals may be taken to this court from final judgments: * * * (b) In causes where there is a dissent in the Appellate Division of the Superior Court; * * *."

and *R. R.* 1:2–6, which reads,

"Any respondent may appeal from a judgment, order, or determination by serving and filing a notice of cross appeal, which shall be governed by the rules relating to notice of appeal." .

*R. R.* 1:2–1(b) was promulgated pursuant to *Art.* VI, § V, ¶ 1(b) of the *New Jersey Constitution*, which provides:

"Appeals may be taken to the Supreme Court: * * * (b) In causes where there is a dissent in the Appellate Division of the Superior Court."

■ Such appeal may be from all or any part of a judgment. See *R. R.* 1:2–8. Where an appellant appeals as a matter of right from a portion of the judgment, the respondent may cross-appeal against the appellant from any other aspect of the judgment.

In *Sorokach v. Trusewich,* 13 *N. J.* 363 (1953), this court said, at *p.* 368:

"The Constitution and our rules do not restrict the reconsideration to the question concerning which there is a dissent, but give the right of appeal 'in the cause' when this event occurs. The appeal under the constitutional provision is from the judgment and not from a portion of the respective opinions rendered."

That reasoning is as well applicable to the right of a respondent to cross-appeal the whole or any part of a judgment against any other party to the cause. This result best comports with the sense of the applicable constitutional and rule provisions. Once a judgment is brought before this court pursuant to an appeal as of right, the entire assemblage of issues should be and is available for adjudication. Fragmented and possible inconsistent results are thus avoided. In this manner only may substantial justice be done, especially where the issues are manifold and the parties numerous. The technical necessity for a petition for certification to the Appellate Division is eliminated as the judgment has already been removed to the Supreme Court. Therefore, we hold that a respondent to an appeal taken as of right may as well cross-appeal in the manner provided by the *Rules*, against the appellant or any third party to the appeal in the Appellate Division as a matter of right.

Consequently, plaintiff, as a respondent to the main appeal, properly cross-appealed, as a matter of right, the judgment favorable to H. & M.

## II.

Since the questions of the applicability of *N. J. S. A.* 39:3–84 and the propriety of the Schiavone and H. & M. judgments logically lend themselves to concurrent discussions, we shall consider these contentions jointly. In connection with the defendant's motion, the testimony must be viewed most favorably to plaintiff, giving it the benefit of all legitimate inferences which are to be drawn therefrom. *J. L. Querner, etc., Inc. v. Safeway Truck Lines, Inc.*, 35 *N. J.* 564, 566 (1961); *Kopec v. Kakowski*, 34 *N. J.* 243, 244 (1961):

With this guide in mind, the trial court should have reached the following conclusions for the purpose of the motion:

Plaintiff is a realty company. Both it and the C. & C. Trucking Company (C. & C.) are owned by the Fortugno

family. C. & C. is engaged in hauling horse manure from Aqueduct and Belmont race tracks in New York to Evandale, Pennsylvania. Plaintiff leases to C. & C. certain lands in New Jersey upon which are situated an office, a garage, and a platform truck scale which was installed in 1946. The scale has a manufacturer's rated capacity of 60,000 pounds, and a ten to fifteen percent tolerance above that figure. It is used by C. & C. to weigh loads of manure before shipment. Prior to the incident on December 2, 1957 which gave rise to this litigation, the maximum weight placed upon these scales was between 60,000 and 62,000 pounds. Plaintiff, for a period of time prior to December 2, 1957 (the exact duration of which is not disclosed), had permitted both Schiavone, a scrap dealer, and H. & M. to utilize its scales without charge. The apparent purpose of the weighing was to ascertain the weight of commodities in connection with the purchase or sale thereof by Schiavone or H. & M. Although plaintiff allowed its scales to be so used as an accommodation, its employee, Ruble, a licensed weighmaster and employee of plaintiff, was paid fifty cents for a certificate of the ascertained weight of each load. It was Schiavone's custom, after its loaded trucks were weighed at plaintiff's yard, to check the weight thus determined by a second weighing on its own 100,000 pound scale.

The details of the original arrangement under which Schiavone and H. & M. were granted leave to use the scales are not revealed. However, it appears that by virtue of individual agreements made some years prior to 1957 between plaintiff and Schiavone and H. & M., they have each employed the scales at will and without separate antecedent requests. Although it was not shown how often this practice was followed, it was testified that the Schiavone weighings occurred approximately ten times per year.

On November 6, 1957 Schiavone entered into an agreement with H. & M. to purchase various items of scrap metal. The H. & M.-Schiavone contract described the items being sold, as follows:

"Lot A—11 General Electric Traction Motors, Model No. 259 complete.

Lot B—3 General Electric Traction Motor Shells, Model No. 259.

Lot C—16 General Electric Traction Motors, Model No. 212 complete (armatures and shells not all assembled).

| Estimated weights | Lot A | Lot B | Lot C |
|---|---|---|---|
| | 16.7 G.T. | 2.7 G.T. | 39.14 G.T." |

The contract further provided:

"6. Each truckload of material removed from the premises shall be weighed at Seller's expense by a certified weighmaster designated by the Seller and the Seller may have a representative ride with each truck for such purpose."

Pursuant to the above-quoted sixth paragraph of the contract, H. & M. directed that plaintiff's scale should be utilized. Schiavone furnished the truck, which was operated by its driver in the company of one Heinen, the stock foreman of H. & M. Heinen had served in a similar capacity in the past. The general weighing procedure on December 2, 1957 was as follows: The empty truck was first weighed to ascertain the tare weight. The truck was then loaded at the H. & M. yards under the supervision of Heinen, driven to plaintiff's place of business and weighed to ascertain the gross weight. The difference between the gross and the tare weight represented the net weight of the load, upon the basis of which H. & M. was to be paid.

In accordance with the above *modus operandi*, the first load consisting of the 11 General Electric Traction Motors, designated as "Lot A," was weighed. The gross weight was found to be 55,500 pounds and the net weight 35,960 pounds, approximately 1,400 pounds less than the sales contract estimate. After the delivery of the first load to Schiavone's yard, the truck was again weighed to ascertain the tare weight. The three General Electric Motor Shells comprising "Lot B" were then loaded and weighed. The combined gross weight was determined to be 25,300 pounds and the net weight 5,800 pounds, 248 pounds less than the sales contract estimate. With the second load still aboard, the truck returned to H. &

M. yards, where 8 General Electric Traction Motors of "Lot C" were added. It returned to plaintiff's establishment. Upon being driven on the scale the damage here complained of occurred. When later weighed on Schiavone's scale the gross weight of this load was discovered to be 69,280 pounds. Heinen knew the estimated weights of the separate items, having checked with the New York office, and he "had a fair idea of [the weight] of this load." His perturbation because of the weight is evidenced by his statement that he had "checked with the truck driver" to make sure that he was not overloading the truck. Schiavone's truck driver admitted that this was possibly the heaviest load he had ever placed on this truck. According to the estimated weights, the truck and load weighed 69,136.8 pounds.

The record is devoid of proof that plaintiff had any knowledge of the weight of the last load prior to its weighing. Nor is there any proof that Schiavone or H. & M. had actual knowledge of the rated capacity of the scale.

Plaintiff contends that defendants breached a duty owed to it not to drive a loaded truck weighing 69,280 pounds upon its scales when said scales possessed a rated capacity of 60,000 pounds augmented by a reasonable tolerance factor of 10% to 15%. This duty is bottomed upon two distinct theses of negligence. Plaintiff asserts: (1) that *N. J. S. A.* 39:3-84 established a duty not to operate a loaded truck upon plaintiff's lands, as well as upon the highway, in excess of 40,000 pounds, which was the weight permitted for a truck of this nature under the statute at that time; (2) that common law principles under the facts involved herein, *i. e.,* the driving of a loaded truck which weighed 69,280 pounds, upon plaintiff's scales, without prior inquiry as to the capacity of said scales, constituted an act of negligence for which defendants are liable.

For plaintiff to succeed upon its first theory, it must demonstrate that it is one of a class for whose benefit the statute was enacted. If plaintiff establishes this status, it then may be argued that the breach of the statute was the efficient cause

of the damage to plaintiff's scales because the standard which the statute imposed had been breached. *Guse v. Martin*, 96 *N. J. L.* 262 (*E. & A.* 1921) ; *Evers v. Davis*, 86 *N. J. L.* 196 (*E. & A.* 1914) ; *Lambe v. Reardon*, 69 *N. J. Super.* 57, 68 (*App. Div.*), certif. denied 36 *N. J.* 138 (1961). If plaintiff proved itself to be within the protected category, the statute would be applicable as evidence of negligence for the consideration of the jury. *Stoelting v. Hauck*, 32 *N. J.* 87, 105 (1960) ; *Evers v. Davis, supra*.

 The question is, therefore, whether plaintiff is within the class to be protected, and whether the harm to its scale is that which is sought to be avoided under the statute. *Evers v. Davis, supra; Daniels v. Brunton*, 9 *N. J. Super.* 294 (*App. Div.* 1950), affirmed 7 *N. J.* 102 (1951).

As stated in *State v. Gratale Brothers*, 26 *N. J. Super.* 581, 584 (*App. Div.* 1953), the statute in question is penal and *quasi*-criminal in its nature (*State v. Rowe*, 116 *N. J. L.* 48 (*Sup. Ct.* 1935), affirmed 122 *N. J. L.* 466 (*E. & A.* 1939)), and must be therefore strictly construed (*State v. Baker*, 3 *N. J. Misc.* 324, 129 *A.* 466 (*C. P.* 1925), affirmed *ibid.* 532 (*Sup. Ct.* 1925) ; *State v. Perretti*, 9 *N. J. Super.* 97 (*App. Div.* 1950). The court, in *Gratale*, continues, at *p.* 584:

"The evil or mischief intended to be suppressed by the statute in question was the loading of a vehicle in excess of the weight authorized by the terms of its certificate of registration. What the Legislature had in mind * * * was the protection of our highways and highway structures—subject as they are to the extraordinary use and ever-increasing volume of commercial traffic crossing and recrossing our State—from damage by overweight vehicles. *Cf. N. J. S. A.* 39:3–84 and 84.4."

In *State v. E. H. Miller Trans. Co., Inc.*, 74 *N. J. Super.* 474, 479 (*App. Div.* 1962), certif. denied 38 *N. J.* 306 (1962), the court stated:

"The history of our statutes relating to highway weight-limitations clearly indicates the legislative design to protect the roads, highways and people of the State from the hazards and destructive consequences

that attend transportation by overweight vehicles. See transcript of public hearing on March 29, 1950 before the Senate Judiciary Committee on *Assembly Bill No.* 13 which preceded the enactment of *L.* 1950, *c.* 142, *sec.* 5 (*N. J. S. A.* 39:3–84.3)."

See also *State v. Olean Transportation Corp.*, 39 *N. J. Super.* 236, 240–241 (*Cty. Ct.* 1950); *State v. Levitan Interstate Transport, Inc.*, 58 *N. J. Super.* 345 (*Cty. Ct.* 1959).

We hold that the mischief to be suppressed by *N. J. S. A.* 39:3–84 did not include the driving of trucks upon these scales when the combined weight of truck and load was in excess of the statutory maximum loads permitted upon the highway. A scale used to ascertain compliance with that statute must be equipped to handle trucks that are in excess of the statutory limitation, else such scales would be purposeless. *State v. Gratale Brothers, Inc., supra; State v. Levitan Interstate Transport, Inc., supra.* See *New Jersey Senate Judiciary Committee, Public Hearing on Assembly Bill No.* 13, *The Truck Bill,* March 29, 1950. Therefore, plaintiff does not fall within the class of persons for whose benefit the statute was enacted and hence *N. J. S. A.* 39:3–84 was not applicable either as evidence of a duty or as evidence of negligence arising from a breach of such alleged duty.

█ Plaintiff's alternative assertion is that defendants breached a common law duty not to weigh a loaded truck which was in excess of the rated capacity and reasonable tolerance of plaintiff's scales. To render defendants liable there must be found a breach of a duty, which duty, if observed, would have averted the plaintiff's injuries. *Brody v. Albert Lifson & Sons,* 17 *N. J.* 383, 389 (1955); *Mazzilli v. Selger,* 13 *N. J.* 296, 301 (1953).

█ For plaintiff to succeed, it must prove either that defendants knew that there was a risk of injury to plaintiff's scales by the placing of an excessive weight thereon, or could have obtained that knowledge had they conducted themselves as reasonably prudent persons. See *Bohn v. Hudson & Manhattan R. Co.,* 16 *N. J.* 180, 184 (1954); 2 *Harper and James, The Law of Torts,* § 16.5 (1956); *Prosser, Torts,* §

124, *pp*. 131–132. There is no proof that defendants had actual knowledge of the rated capacity of plaintiff's scales. It is necessary, then, to determine from the facts, whether the defendants, as reasonably prudent persons, should have inquired as to the capacity of the scales before driving thereon, for where a duty to use care is imposed, and where knowledge is necessary to careful conduct, voluntary ignorance is equivalent to negligence. 2 *Harper and James, id.* If the jury finds that defendants should so have inquired, it follows that driving an excessive load upon plaintiff's scales, absent prior inquiry, constituted an act of negligence.

Therefore, the existence of a duty to inquire as to the capacity of the scales before driving thereon must initially be established. This duty of inquiry must arise, if at all, from the course of conduct between the parties to this litigation. Thus, plaintiff had the burden of proving a relationship with defendants which would give rise to a duty to make inquiry concerning the scales' capacity. More particularly, the present question is whether the prior utilization of the scales, and the circumstances which surrounded their use, were of such a nature that they established a particular course of conduct to which defendants, as prudent persons, should have conformed. The focus of the required proof was the creation of an obligation to inquire as to the scales' limitations if defendants intended to deviate from the course of conduct which their prior acts may have established.

As noted above, there is no definitive recital of the details of the original agreement under which defendants made use of the scales. However, the record contains ample proof to sustain a finding that the scales were primarily for the purposes of plaintiff's own business and that defendants' use was a matter of accommodation without plaintiff's receipt of any monetary consideration. It also appears that the purpose for which defendants employed plaintiff's scales over the years was to ascertain the weight of the truck and load in connection with their commercial transactions and not in connection with ascertaining whether the total weight com-

plied with the statutory weight requirements of *N. J. S. A.* 39:3–84. In passing, we note that plaintiff made a proffer of proof that it was not in the business of weighing for public hire. The trial court sustained an objection to such testimony. We hold that such evidence was material and relevant and should be admitted in furtherance of plaintiff's proof of its special arrangements with defendants.

Although defendants had no positive information of the capacity of the scale, it is deducible from the testimony that since no prior load weighed on this scale had exceeded 62,000 pounds, they knew that none of their trucks had in the past equaled the weight of this load. Heinen, the agent of H. & M., realized that the approximate weights of the scrap were in excess of this amount on the third weighing and was disturbed that the truck might have been overloaded. Schiavone's truck was loaded 29,280 pounds over its licensed and registered allowable weight. Additionally, Schiavone's truck driver had never transported such a heavy load on this truck. Adding all of these facts together, a jury could legitimately have concluded that a reasonably prudent man, under the circumstances, had a duty to make inquiry of plaintiff concerning the capacity of the scales.

### III.

The next question posed is the liability of H. & M.

Under the facts as above recited, it appears that the weighing of the scrap on plaintiff's scale was a joint undertaking of both defendants. It must be remembered that the truck was driven by an employee of Schiavone in the company of an employee of H. & M. H. & M. had used the scales on prior occasions. Without again detailing the entire proof, H. & M.'s employee had reason to know of the weight of the load. Both Schiavone and H. & M., through their agents, were affirmative actors in this concerted undertaking and both parties could be held jointly liable if it is established that there was a duty not to drive upon plaintiff's scale with a load the size borne by Schiavone's truck.

## IV.

R. R. 1:9–2 provides:

"Such costs are recoverable by law, including the cost of the transcript, and the reasonable expense of the printing of briefs, appendices, petitions and motions, shall be taxed by the clerk as follows:

\* \* \* \* \* \* \* \*

(2) In the absence of such order, in favor of the prevailing party, except that where a new trial is ordered such costs to the prevailing party on the appeal shall abide the event of the new trial, and except that costs shall not be taxed against a wife in a divorce, annulment or maintenance action."

R. R. 1:9–2 is made applicable to the Appellate Division through R. R. 2:9–2. The allowance of costs is discretionary. *Hughes v. Eisner*, 8 *N. J.* 228 (1951).

Here the Appellate Division followed the rule and did not abuse its discretion in failing to award costs to plaintiff.

Affirmed as to Schiavone-Bonomo Corporation. Reversed and remanded for a new trial as to Herman T. Stichman, Trustee of Hudson & Manhattan Railroad Company.

As to Schiavone-Bonomo Corporation:

*For affirmance*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For reversal*—None.

As to Herman T. Stichman:

*For reversal* — Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For affirmance*—None.