185 N.J. Super. 534 (1982)
449 A.2d 1339
JOSEPH BARTOLO, CHARLES NOTA BARTOLO, FRANK VECCHIO AND VINCENT LEPERA, PLAINTIFFS,
v.
BOARDWALK REGENCY HOTEL CASINO, INC., A/K/A BOARDWALK REGENCY HOTEL CASINO, INCORPORATED, JOHN DOE 1, JOHN DOE 2 AND JOHN DOE 3, DEFENDANTS.
Superior Court of New Jersey, Law Division Middlesex County.
Decided January 21, 1982.
Richard V. Wilde for plaintiffs (Romano, Hehl, Romankow & Wilde, attorneys).
*535 Joseph Collins for defendants (Cooper, Perskie, Katzman, April, Niedelman & Wagenheim, attorneys).
SKILLMAN, J.S.C.
Is it permissible for a casino to detain a patron suspected of being a "card counter" for the purpose of questioning? This issue is presented in the context of a tort action brought by four patrons of a casino who allege that they were falsely imprisoned by its security personnel. Defendants are the Boardwalk Regency Hotel Casino and several of its employees.
The matter is before the court on a motion for summary judgment filed by defendants. Therefore, the court must accept as true for the purpose of the motion the descriptions of the incident provided by plaintiffs in their depositions. Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 73-75 (1954).
Plaintiffs are two brothers and two of their friends. All four are occasional social gamblers. They arrived at the Boardwalk Regency on December 26, 1979, played various casino games, including blackjack, and lost money. They returned to the gambling area around 11 a.m. the next morning and began playing blackjack. After playing for about an hour they were approached by two casino security guards dressed in uniforms. Plaintiffs were notified that they had been identified as card counters and were directed to accompany the guards. One plaintiff was grabbed by the back of the collar and pulled away from the blackjack table. The others were grabbed by the arms and led away. This physical removal happened so quickly and so forcefully that some plaintiffs were unable even to remove their chips from the table. All four were led to a nearby area where they were joined by a games manager, who ordered them to produce identification so that they could be registered and prevented from playing blackjack. At first plaintiffs refused to produce identification, protesting that they were not card counters. However, they were threatened with arrest if they refused to cooperate, and they then acceded to the demand. When identifications were produced, the games manager wrote plaintiffs' *536 names on a pad, told them they would not be permitted to play blackjack again at the Boardwalk Regency or any other casino and directed them to leave. During this entire confrontation the two uniformed casino security guards remained on either side of plaintiffs. The three plaintiffs who were deposed all testified that they did not feel free to leave the casino between the time they were pulled away from the blackjack table and when they produced identification.
After unsuccessfully seeking to lodge a complaint concerning the incident with an official of the New Jersey Casino Control Commission, plaintiffs arranged a meeting with the assistant manager of the casino. The assistant manager acknowledged that the casino personnel had been at fault and said that he would like to make amends by buying plaintiffs a meal and allowing them back into the blackjack game. However, plaintiffs declined the offer and departed from the casino. This lawsuit followed.
The complaint sets forth three separate theories of liability arising out of this incident: assault and battery, slander and false imprisonment. However, defendants concede that a contested material issue of fact is presented by the assault and battery claim, and plaintiffs concede that their slander claim must be dismissed due to an inability to show any damage to their business, professional or personal reputations resulting from the incident. Therefore, the sole question at this juncture is whether there is a contested material issue of fact on the false imprisonment claim.
The tort of false imprisonment is established upon showing any "unlawful restraint upon a man's freedom of locomotion." Earl v. Winne, 14 N.J. 119, 128 (1953). The unlawful restraint need not be imposed by physical force. As observed in Earl v. Winne:
This constraint may be caused by threats as well as by actionable force, and the threats may be by conduct or by words. If the words or conduct are such as to include a reasonable apprehension of force and the means of coercion is at hand, a person may be as effectually restrained and deprived of liberty as by prison bars. [at 127]
*537 Furthermore, the assertion of legal authority to take a person into custody, even where such authority does not in fact exist, may be sufficient to create a reasonable apprehension that a person is under restraint. Hebrew v. Pulis, 73 N.J.L. 621 (E.&A. 1906); see, also, 1 Restatement, Torts 2d, § 41 at 61 (1965).
There can be no serious doubt that the elements of false imprisonment would be established if plaintiffs' version of this incident were believed by a jury. According to plaintiffs, they were accosted by uniformed security guards who physically removed them from the blackjack table. They were then subjected, while surrounded by security guards, to an interrogation by a games manager, who said that they would be arrested unless identification was produced. Under these circumstances, plaintiffs reasonably could have concluded that they would be forcibly restrained if they attempted to leave the site of this interrogation without producing identification and that they were thus under confinement.
Defendants do not seriously dispute that the incident, as described by plaintiffs, contains the essential elements of a false imprisonment. However, they assert that a casino has the legal right to detain temporarily a patron suspected of being a card counter. Hence, they argue that any restraint imposed upon plaintiffs was not "unlawful." Defendants assert that they have the same right to detain a suspected card counter as a retail store owner has to detain a suspected shoplifter. See N.J.S.A. 2C:20-11e. In the words of defendants, it is their position that "a casino, in order to protect its interests, may reasonably detain a suspected card counter, and may not be held liable for false imprisonment in so doing."
To assess this contention, it is appropriate to consider the nature of card counting and the asserted justification for casinos to exclude the persons who engage in this activity from blackjack tables. Former Casino Control Commissioner Prospero De Bona issued an addendum to a report on the exclusion of card counters from casinos which described the card counting process as containing three basic elements:

*538 The first is the method for keeping track of, or "counting," the cards that have been dealt. This is usually accomplished by assigning a certain plus or minus value to each card in the deck and keeping a "running total or count" of these values as the cards are being dealt. The "running count" is then converted into a "true count" which depends upon the number of cards left to be dealt. The second element of these systems is the strategy to be followed for hitting, standing, doubling down, splitting pairs or surrendering. This strategy is a variable one which depends on the specific cards held by the player, the exposed card of the dealer, and the plus or minus value of the count at that particular time. The third component of these systems is the ability to vary the amount of each wager so that minimal amounts are bet when the "count" is unfavorable and larger amounts when the "count" is favorable.
Thus, card counting does not involve dishonesty or cheating. On the contrary, a card counter is simply a highly skilled player who analyzes the statistical probabilities associated with blackjack and, based upon those probabilities, develops playing strategies which may afford him an advantage over the casino. It was solely this loss of the normal "house advantage" which caused the casinos to exclude card counters from the blackjack tables.
The Casino Control Commissioner upheld this exclusion policy on the grounds that the common law right of the proprietor of a business to exclude a person from its establishment for any reason it chooses (see Garifine v. Monmouth Park Jockey Club, 29 N.J. 47 (1959)) encompasses the right of a casino to exclude a patron who has devised a technique for winning at blackjack. That determination of the Casino Control Commission was reversed by the Appellate Division (Uston v. Resorts Int'l Hotel, Inc., 179 N.J. Super. 223 (1981)), and the issue is now before the Supreme Court of New Jersey, certification having been granted. 87 N.J. 419-420 (1982). Whichever way the issue ultimately may be resolved, the only point which needs to be made here is that the decision of the Casino Control Commission upholding the exclusion of card counters from blackjack tables was not predicated on the view that such conduct is dishonest or that it is prohibited by statute or administrative regulation, but solely upon the asserted common law rights of casinos as private entrepreneurs.
This circumstance sharply distinguishes the detention of suspected card counters from the detention of alleged shoplifters. *539 Shoplifting is a crime. N.J.S.A. 2C:20-11(e). To aid in the apprehension of shoplifters as well as to enable retail stores to protect themselves from this form of criminal activity, the Legislature has provided that "a merchant, who has probable cause for believing that a person has willfully concealed unpurchased merchandise and that he can recover the merchandise by taking the person into custody, may, for the purpose of attempting to effect the recovery thereof, take the person into custody and detain him in a reasonable manner for not more than a reasonable time." Ibid. Furthermore, to ensure that merchants will be able to exercise this power without inhibition, the Legislature has specifically provided that a merchant who takes a suspected shoplifter into custody as provided by this statute shall not be "civilly liable in any manner or to any extent whatever." Ibid. The decision in Cooke v. J.J. Newberry & Co., 96 N.J. Super. 9 (App.Div. 1967), upon which defendants place primary reliance in support of their motion for summary judgment, simply interprets the predecessor to this statutory provision authorizing the detention of suspected shoplifters. Therefore, it obviously has no pertinency to a case where no legislation has been enacted providing immunity for conduct which otherwise would constitute false imprisonment.
However, defendants contend that N.J.S.A. 5:12-121(b) confers an immunity upon casinos comparable to that which N.J.S.A. 2C:20-11(e) confers upon retail merchants. This section provides in pertinent part:
Any licensee or its officers, employees or agents who shall have probable cause for believing there has been a violation of sections 113 through 116 of this act in the casino by any person may take such person into custody and detain him in the establishment in a reasonable manner for a reasonable length of time, for the purpose of notifying law enforcement or commission authorities. Such taking into custody and detention shall not render such licensee or its officers, employees or agents criminally or civilly liable for false arrest, false imprisonment, slander or unlawful detention unless such taking into custody or detention is unreasonable under all of the circumstances.
To be sure, this section authorizes casino officials to detain patrons under certain circumstances and provides an accompanying *540 qualified immunity from civil liability. However, the operation of this section can be triggered only by the existence of probable cause to believe that "there has been a violation of sections 113 through 116 of this act." These sections (N.J.S.A. 5:12-112 through 5:12-116) make it a crime of the fourth degree or a misdemeanor to use bogus chips, marked cards, loaded dice, sleight of hand tricks and a variety of other devices to cheat or swindle a casino. However, there is no basis upon which card counting can be viewed as cheating or swindling a casino and hence a violation of one of these criminal provisions. Rather, it is simply a skillful technique for playing blackjack which negates the normal advantage of the casino over the player. Therefore, N.J.S.A. 5:12-121(b) affords no authorization to a casino to detain a suspected card counter.
Absent any affirmative statutory authorization to detain suspected card counters, the plaintiffs' version of the incident at the Boardwalk Regency would constitute false imprisonment. Therefore, the defendants' motion for summary judgment, except that part directed at the claim for slander, will be denied.