**Florence ROTH, Plaintiff,**

v.

**GOLDEN NUGGET CASINO/HOTEL, INC., doing business as Golden Nugget Casino/Hotel Corporation, GNAC, Inc., doing business as Golden Nugget of Atlantic City Corporation, Wayne Finkel, Officer Pamela Petrillo, Officer Edward Dickson, John Doe 3 and John Doe 4, jointly, severally and in the alternative, Defendants.**

Civ. A. No. 83–1198.

United States District Court, D. New Jersey.

Nov. 22, 1983.

Cooper, Perskie, April, Niedelman, Wagenheim & Weiss, P.C. by Barry D. Cohen, Atlantic City, N.J., for plaintiff.

Horn, Kaplan, Goldberg & Gorny, P.C. by Leonard C. Horn, Atlantic City, N.J., for defendants.

## OPINION

COHEN, Senior District Judge:

This action, seeking damages arising from the alleged wrongful arrest of the plaintiff by the defendants on November 27, 1981, is before the Court on motion of the defendants seeking summary judgment pursuant to Fed.R.Civ.P. 56. For the reasons that follow, this Court shall grant the defendants' motion as to Count Four of the plaintiff's complaint, alleging defamation, but shall deny summary judgment as to all other counts enumerated therein, including false imprisonment, false arrest, assault and battery, intentional infliction of emotional distress, malicious prosecution, negligence, liability based on *respondeat superior*, and punitive damages for intentional wrongdoing.

In order to properly appreciate the factual circumstances surrounding the plaintiff's arrest, which gave rise to the case at bar, it is necessary to first examine an earlier incident which occurred on July 12, 1981. On that date, the plaintiff, Florence Roth, was evicted from the casino premises of the defendant, Golden Nugget, on the ground that she was a "nuisance." The litigants differ regarding upon what factual basis the casino concluded that the plaintiff was a "nuisance." According to Roth, she was labelled a nuisance and evicted

"because she lost all of her money gambling, became weak, and asked for a glass of orange juice." Plaintiff's brief at 3. The defendants assert that the plaintiff was evicted because she was disturbing other casino patrons by asking them for money and because she had disregarded previous warnings not to enter the casino with large shopping bags, and had again entered the casino with such bags. Defendants' reply brief at 1.

The defendants claim that Roth was told, at the time of her eviction, "that she could not return to the premises." Defendants' brief at 1. Although the defendants assert that the plaintiff does not dispute being told not to return, there does not appear to be any evidence in the form of admissions, depositions or otherwise indicating any such concession by the plaintiff. Neither does the defendants' brief refer to any such evidence.

On November 27, 1981, defendants, Pamela Petrillo and Edward Dickson, without a warrant, arrested Roth when she entered the Golden Nugget casino, which arrest gave rise to this suit. At the time of the arrest, Petrillo and Dickson were acting in the course of their employment as security guards for defendant, Golden Nugget. According to the defendants, Roth was recognized as someone who had previously been evicted and told not to return to the casino. According to Roth, the security guards surrounded her and ordered her to accompany them to the Security Command Post. Plaintiff's brief at 2. According to the defendants, the security guards checked their records and concluded that Roth was a trespasser. They then called the local police who arrived at the casino shortly thereafter and escorted Roth to the Atlantic City police headquarters. Once at police headquarters, formal trespassing charges were filed against Roth.

The defendants admit that their sole basis for detaining Roth on November 27, 1981 was the belief that she was trespassing on the casino premises as a consequence of her earlier eviction therefrom and the defendant security officers' alleged

direction to her at that time that she was not to return. *See* defendants' answer to interrogatory No. 4. In addition, Roth testified during deposition proceedings that subsequent to her July eviction, and prior to her November arrest, she had visited the defendants' casino as many as 20 times without any objection ever having been raised by any of the defendant Golden Nugget's personnel.

Summary judgment practice in this Court is governed by Fed.R.Civ.P. 56, unaffected by state procedural rules. *Schultz v. Newsweek, Inc.*, 668 F.2d 911, 917 (6th Cir. 1982). Fed.R.Civ.P. 56(c) provides that summary judgment will be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party bears the burden of demonstrating that there is clearly no genuine issue of fact and all doubts will be resolved against the moving party. *Adickes v. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1969); *Janek v. Celebrezze*, 336 F.2d 828, 834 (3d Cir.1964).

In the case at bar, the defendants seek summary judgment as to all counts contained in the plaintiff's complaint. As previously noted, that complaint comprises the following causes of action: false imprisonment; false arrest; assault and battery; defamation; intentional infliction of emotional distress; malicious prosecution; and negligence. Roth's complaint also alleges that the defendants' acts were malicious and intentional, thereby justifying a recovery of punitive damages. Finally, Roth asserts that Golden Nugget is liable based on the theory of *respondeat superior.* Golden Nugget offers no argument challenging the plaintiff's conclusion that it is liable under such theory if the conduct of its co-defendant employees is actionable on any of the causes of action pleaded in Roth's complaint. The Court shall address the defendants' motion for summary judg-

ment as to each of these causes of action in the order as presented in the complaint.

■■■ The first two counts of the complaint allege false imprisonment and false arrest. In New Jersey, these two causes of action are merely separate names for the same tort. *Price v. Phillips*, 90 N.J. Super. 480, 484, 218 A.2d 167 (App.Div. 1966). This tort is established upon a showing that the plaintiff's liberty was unlawfully constrained as a result of force, or the threat of force, on the part of the defendant. *Earle v. Winne*, 14 N.J. 119, 128, 101 A.2d 535 (1953); *Bartolo v. Boardwalk Regency Hotel Casino, Inc.*, 185 N.J.Super. 534, 536, 449 A.2d 1339 (Law Div.1982). Malice or bad faith is not an element of this cause of action and need not be proven by the plaintiff. *Earle, supra*, 14 N.J. at 128, 101 A.2d 535; *Baldwin v. Point Pleasant Beach & Surf Club*, 3 N.J.Super. 284, 286, 66 A.2d 62 (Law Div. 1949).

■■■ In the instant case, plaintiff alleges that she was unlawfully detained by the defendant security guards' use or threat of use of force. According to her brief, she was surrounded by the security guards and ordered to accompany them to the Security Command Post. The plaintiff is a 61 year old woman. Her confrontation with two security officers ordering her to accompany them are circumstances which might give rise to "a reasonable apprehension of force." *Earle, supra,* 14 N.J. at 127, 101 A.2d 535. Moreover, the assertion of legal authority to arrest a person, even where such authority does not, in fact, exist, is adequate to create a reasonable apprehension of force. *Bartolo, supra*, 185 N.J.Super. at 537, 449 A.2d 1339. Were the defendant security officers uniformed at the time of Roth's arrest, a factual question not addressed by the parties, they might reasonably appear to Roth to be in a position of legal authority.

Nonetheless, the defendants argue that the arrest at issue was made with legal authority and, therefore, they cannot be liable for false arrest or false imprisonment. To this end, the defendants assert that, pursuant to N.J.S.A. § 2C:18–3 (West 1982)[1], Roth was guilty of criminal trespass when she entered the Golden Nugget on the date of her arrest. Since this alleged offense was committed in the presence of the defendant security guards, the defendants conclude that they had legal authority to arrest Roth pursuant to N.J. S.A. § 2A:169–3 (West 1971)[2].

The defendants' argument hinges on the accuracy of its claim that Roth was committing a criminal trespass when she entered the casino on the day of her arrest. There is some basis for doubt on this point, however.

According to Roth's complaint, the criminal trespass charges brought against her

---

**1.** N.J.S.A. § 2C:18–3 (West 1982), provides:

   a. Unlicensed entry of structures. A person commits an offense if, knowing that he is not licensed or privileged to do so, he enters or surreptitiously remains in any structure, or separately secured or occupied portion thereof. An offense under this subsection is a crime of the fourth degree if it is committed in a dwelling. Otherwise it is a disorderly persons offense.

   b. Defiant trespasser. A person commits a petty disorderly persons offense if, knowing that he is not licensed or privileged to do so, he enters or remains in any place to which notice against trespass is given by:

   (1) Actual communication to the actor; or

   (2) Posting in a manner prescribed by law or reasonably likely to come to the attention of intruders; or

   (3) Fencing or other enclosure manifestly designed to exclude intruders.

   c. Defenses. It is an affirmative defense to prosecution under this section that:

   (1) A structure involved in an offense under subsection a. was abandoned;

   (2) The structure was at the time open to members of the public and the actor complied with all lawful conditions imposed on access to or remaining in the structure; or

   (3) The actor reasonably believed that the owner of the structure, or other person empowered to license access thereto, would have licensed him to enter or remain.

**2.** N.J.S.A. § 2A:169–3 (West 1971) provides:

   Whenever an offense is committed in his presence, any constable or police officer shall, and any other person may apprehend without warrant or process any disorderly person, and take him before any magistrate of the county where apprehended.

as a result of her appearance at the Golden Nugget casino on November 27, 1981, were dismissed for failure to prosecute on behalf of the complaining witnesses, the present defendants.ˉ Complaint, Count 6, ¶ 5. Even though this dismissal was not effected by an adjudication of innocence, the plaintiff has still raised factual issues to challenge the defendants' assertion that she committed a criminal trespass.

Section 2C:18–3, which defines criminal trespass, requires knowledge on the accused's part that she is entering a premises without license or privilege to do so. Roth's assertion that she had entered, without objection, the Golden Nugget casino as many as 20 times after her July 12, 1981, eviction could support the inference that Roth believed she had permission to enter the casino on November 27, 1981. In addition, there is a dispute between the parties as to whether the Golden Nugget security officers advised Roth at the time of her eviction that she was forbidden from ever entering the casino again. Resolving all doubts in the plaintiff's favor, as must be done in addressing a summary judgment motion, *Adickes, supra*, 398 U.S. at 157, 90 S.Ct. at 1608. Roth may not be guilty of criminal trespassing on November 27, 1981, and her arrest consequently may not have been legally sanctioned under N.J.S.A. § 2A:169–3 (West 1971), as contended by the defendants.

The defendants attempt to avoid this obstacle to the success of their argument, by construing Section 2A:169–3 to authorize an arrest without a warrant not only when an offense has in fact been committed in their presence but also when there are reasonable grounds to believe such an offense is being committed, regardless of whether, as a matter of law, it has in fact not been committed. Defendants' brief at 6. Section 2A:169–3 provides that "whenever an offense is committed in his presence, any constable ... shall, and any other person may, apprehend without warrant or process any disorderly person ...." The plain meaning of this statute indicates that there must be an actual offense committed before an arrest without a warrant will be

legally justified. Moreover, a person must presumably commit a disorderly persons offense before he may be considered a disorderly person and subject to the warrantless arrest sanctioned by the statute. The criminal trespass with which Roth was charged, but of which she was never convicted, is a disorderly persons offense. N.J.S.A. 2C:18–3 (West Supp.1982).

The defendants offer no case law authority or legislative history to support their more liberal construction of Section 2A:169–3. Neither has this Court found any such authority. This issue thus appears to be one of first impression. A study of the common law existing prior to the passage of Section 2A:169–3 indicates that the defendants' construction of that statute works a substantial departure from prior developed jurisprudence.

At common law, a citizen could make an arrest without a warrant only where a felony was provable and there were reasonable grounds to believe that the arrested person had committed the felony, *State v. McCarthy*, 123 N.J.Super. 513, 517, 303 A.2d 626 (Law Div.1973); *Reuck v. McGregor*, 32 N.J.L. 70 (Sup.Ct.1866). Arrests without a warrant for misdemeanors were permitted only when the misdemeanor was committed in the presence of the arresting person. *Moll v. United States*, 413 F.2d 1233, 1236 (5th Cir.1969). However, it was "essential that such offense shall actually have been committed or attempted." 6A C.J.S. *Arrest* § 15 at 25 (1975). Hence, "where it appeared after arrest that a person had in fact not committed any offense, the arrest was held unlawful." *Id. See also* Prosser, *Law of Torts*, § 17 at 100 (1971).

Similarly, under the common law, even law enforcement officials, lacking a warrant, could only make arrests when misdemeanors, in fact, had been committed in their presence. 6A C.J.S. *Arrest* §§ 20(b) at 44, 20(d) at 46; Prosser, *Law of Torts* § 26 at 133 (1971). Addressing the policy concerns for such restrictions, the New Jersey Supreme Court stated the following:

The thesis, no doubt, is that unless the officer himself knows of the offense and the offender, it is better, in the light of the less serious nature of the alleged offense, to leave the determination of probable cause for an arrest to an officer in the judicial branch.

*State v. Morse*, 54 N.J. 32, 35, 252 A.2d 723 (1969). Pertaining more specifically to the private citizen making such an arrest, Professor Prosser identified the following additional concerns justifying the common law restrictions:

The reason is that he [the private citizen] has no public responsibility; there is less necessity for such arrests, and more occasion to deter private citizens from taking the law into their own hands.

Prosser, *Law of Torts*, § 17 at 100.

Section 2A:169–3 may have eliminated, in some circumstances, the need for a misdemeanor to involve a breach of the peace before its commission authorized a citizen's arrest, as was often required at common law, but there is no indication that the New Jersey Legislature intended to go any further in their modification of the common ·law. This conclusion is further bolstered by the fact that the New Jersey Legislature has demonstrated that where it does intend to depart from the common law and sanction a citizen's arrest on less than the factual commission of a crime, it will do so in plain language. *See, e.g.,* N.J.S.A. § 2C:20–11(e) (West 1982) (Authorizing a merchant to arrest a person for shoplifting based only on probable cause that the person was shoplifting and providing that such arrest "shall not render such person … civilly liable ….); N.J.S.A. § 5:12–121(b) (West Supp.1983–84) (Authorizing a casino gaming licensee or its agent to arrest someone suspected of cheating at casino games where such suspicion is based on probable cause and providing that such arrest "shall not render the licensee or its agent civilly liable for false arrest, false imprisonment ….").

■ In light of the aforementioned factors, this Court concludes that Section 2A:169–3 does not eliminate the requirement that a disorderly persons offense has occurred, in fact, before an arrest without a warrant will be given legal sanction. The defendants' good faith and even reasonable belief that they were effectuating a legal arrest of the plaintiff will, therefore, not render that arrest legal in fact for the purposes of the present action. As discussed earlier, there are genuine factual disputes going to the legality of the plaintiff's arrest by the defendants. Summary judgment, consequently, as to the plaintiff's false imprisonment and false arrest actions would be inappropriate.

■ The next count in Roth's complaint is the allegation that there was an assault and battery by the defendant security guards. Other than to argue the legality of their arrest, the defendants offer no challenge to this count of the plaintiff's complaint. As previously discussed, the legality of that arrest is in doubt. Hence, summary judgment should not issue as to the assault and battery count.

■ The fourth count of Roth's complaint seeks recovery for the alleged defamation of her character effected by the defendants' allegedly illegal arrest. The defendants correctly argue that this cause of action be barred by the one year statute of limitations set forth in N.J.S.A. § 2A:14–3 (West 1952). The plaintiff's complaint alleges that she was defamed at the time when she was arrested, that is on November 27, 1981. The present action was commenced by the filing of the complaint in this Court on April 7, 1983. Thus, this action was commenced well after the statutory period had expired. Under such circumstances, the defendants are entitled to summary judgment with respect to the defamation cause of action pleaded by the plaintiff.

The next count of the complaint alleges intentional infliction of emotional distress. New Jersey recognizes this cause of action to be an independent tort when the wrongful conduct is "so extreme and outrageous 'as to go beyond all possible bounds of decency, and to be regarded as atrocious

and utterly intolerable in a civilized community.' " *Hafner v. Hafner,* 135 N.J.Super. 328, 333–34, 343 A.2d 166 (Law Div.1975), *quoting with approval from Restatement, Torts* 2d, § 46, Comment (d) at 73. *See also Hume v. Bayer,* 178 N.J.Super. 310, 316–17, 428 A.2d 966 (Law Div.1981).

■ In this case, the defendants contend that the action of the arresting security officers was not such as could be considered outrageous Resolution of the litigants' dispute on this matter is not a simple task. "Whether or not particular actions may be fairly labeled 'outrageous' will not always be clear." *Hume, supra,* 178 N.J.Super. at 319, 428 A.2d 966. In any event, before the character of the defendants' conduct may be defined it will be necessary to identify what, as a factual matter, that conduct consisted of. As previously discussed, the facts surrounding Roth's arrest are disputed by the parties. Summary judgment should therefore not be granted as to the cause of action alleging intentional infliction of emotional distress.

■ In her next count, the plaintiff alleges a cause of action based on malicious prosecution. In New Jersey, malicious prosecution comprises four elements: a criminal proceeding instituted or continued by the defendant against the plaintiff; termination of it in favor of the accused; absence of probable cause for the charge; and malice, which may be inferred from the lack of probable cause. *Voytko v. Ramada Inn of Atlantic City,* 445 F.Supp. 315, 322 (D.N.J.1978); *Lind v. Schmid,* 67 N.J. 255, 262, 337 A.2d 365 (1975). In the present case, disputes regarding the circumstances of Roth's arrest affect any determination of the presence or absence of probable cause for her arrest. "When the facts relating to probable cause are in dispute, the issue must be resolved by the jury ...." *Zalewski v. Gallagher,* 150 N.J. Super. 360, 368, 375 A.2d 1195 (App.Div. 1977). Once again, the disputes regarding the circumstances of Roth's arrest make summary judgment inappropriate, and summary judgment as to the cause of action alleging malicious prosecution shall therefore be denied.

■ The next count of the plaintiff's complaint seeks damages on the basis of the defendants' alleged negligence. The defendants argue, correctly, that under New Jersey law a defendant cannot be liable in negligence unless some duty was owed by the defendants to the plaintiff. *Fortugno Realty Co. v. Schiavone-Bonomo Corp.,* 39 N.J. 382, 393, 189 A.2d 7 (1963). Essentially, the defendants argue that no duty was owed to the plaintiff due to her earlier eviction which, in effect, allegedly made her a trespasser. As has already been amply demonstrated, it is not at all certain that Roth was a trespasser. The defendants further contend that nothing they did could be construed as negligent. This argument is unpersuasive. The defendants might be deemed to have been negligent in failing to determine with certainty whether or not Roth was in fact a criminal trespasser, or in failing to procure a warrant before arresting her. Hence, summary judgment should not issue as against the plaintiff's negligence cause of action.

■ The demand by the plaintiff for punitive damages also cannot be summarily dismissed as it is not possible to determine whether the defendants acted with reckless disregard of the plaintiff's rights until all previously discussed factual disputes are resolved.

The foregoing analysis of the issues raised by the defendants' motion for summary judgment leads this Court to conclude that the motion should be denied as to all of the counts in the plaintiff's complaint except for the fourth count alleging defamation. As to that count, only, summary judgment shall be granted. The Court shall file an appropriate order.