Antoinette Connie ANELA and Angela DiPietro, Plaintiffs,

v.

CITY OF WILDWOOD, Harry Breslin, individually and as Chief of Police of the City of Wildwood, various unnamed police officers of the City of Wildwood, and William C. Mitchell and Anthony Robinson, individually and as police officers of the City of Wildwood, Defendants.

Maureen McDONNELL, Lisa Tortis and Gina Bucceri, Plaintiffs,

v.

CITY OF WILDWOOD, Harry Breslin, individually and as Chief of Police of the City of Wildwood, various unnamed police officers of the City of Wildwood, and William C. Mitchell and Anthony Robinson, individually and as police officers of the City of Wildwood, Defendants.

Roxann Cox COLE, Plaintiff,

v.

CITY OF WILDWOOD, Harry Breslin, individually and as Chief of Police of the City of Wildwood, various unnamed police officers of the City of Wildwood, and William C. Mitchell and Anthony Robinson, individually and as police officers of the City of Wildwood, Defendants.

Civ. A. Nos. 83–1094, 83–2444 and 83–2525.

United States District Court, D. New Jersey.

Sept. 7, 1984.

William S. Greenberg, James Schwerin, Greenberg, Kelley & Prior, Trenton, N.J., for plaintiffs.

Gerard H. Hanson, Brener, Wallack & Hill, Princeton, N.J., for defendants, City of Wildwood, William C. Mitchell and Anthony Robinson.

Marc L. Hurvitz, Horn, Kaplan, Goldberg & Gorny, Atlantic City, N.J., for defendant, Harry Breslin.

## OPINION

GERRY, District Judge.

This case involves six plaintiffs, all teenage girls, who, on the night of July 3, 1981, were arrested for violating a noise ordinance in Wildwood, New Jersey, and detained overnight. In the morning, they pleaded guilty, were fined and released. Named as defendants are: the City of Wildwood, its Chief of Police, and a couple of police officers. The defendants were charged in the complaint with a variety of constitutional violations (§ 1983), as well as a few pendent common law violations, pursuant to the New Jersey Tort Claims Act. There have been a couple of motions for summary judgment which have considerably thinned out the case. Presently before the court is the summary judgment motion of Harry Breslin, Chief of Police.

As to Chief Breslin, the only remaining live claims are a due process claim based on an allegedly unconstitutionally lengthy detention, and a state law claim for false imprisonment. In this court's bench opinion of May 18, 1984, we stated:

> These two claims ultimately come down to the same issue. The constitutional claim is addressed to the question of whether there are reasons justifying the holding of the plaintiffs overnight. The state claim also involves the reasonableness of continued incarceration. Neither claim depends on the (conceded) validity of the arrest itself—the issue for both

claims is whether the defendants' conduct *after* arrest was reasonable.

In his motion for summary judgment, Chief Breslin maintains that he is entitled to an immunity defense on both claims.

### 1. *§ 1983 claim.*

 Initially, the defendant seems to be making an argument that state law immunities arguably available to him under the New Jersey Tort Claims Act also immunize him on the § 1983 claim against him. This argument is plainly incorrect. Federal rights cannot be denied by the passage of state immunity law. *See Mancini v. Lester*, 630 F.2d 990, 994–95 (3d Cir.1980).

 The defendant next argues that immunity law developed in the § 1983 context entitles him to a qualified immunity. This argument, the court believes, has some merit. The immunity standard for officials exercising discretionary functions has been set forth in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). *Harlow* eliminated the "subjective" prong of the immunity defense but preserved the objective test of immunity. *Harlow* held that:

> government officials ... are shielded from liability for civil damages insofar as their conduct does not violate *clearly established* constitutional rights of which a reasonable person would have *known.*

*Id.* at 818, 102 S.Ct. at 2738 (emphasis added). *See also Czurlanis v. Albanese*, 721 F.2d 98, 108 (3d Cir.1983).

The constitutional right in question here is the right that the period of detention following arrest and before the arrestee is brought before a magistrate (for the setting of bail) be *"brief,"* that is, no longer than is necessary for the taking of "administrative steps incident to arrest." *Fisher v. Washington Metro Transit Authority*, 690 F.2d 1133 (4th Cir.1982). It is difficult to say that this constitutional right was clearly established at the time of the events in question. As stated by the *Fisher* court (*supra*):

Whether there are any direct constitutional limits on the post-arrest, pre-hearing detentions of arrested persons by state officers is a question that has not been much before the federal courts .... In a line of § 1983 cases the former Fifth Circuit has apparently accepted the view that there are no such constitutional limits .... But other lower federal courts have simply *assumed*, though finding no violation on the facts at hand, that independently of any state law requirements there are ultimate durational limits derived from due process guarantees.... *The Supreme Court has not addressed the issue directly.*

*Id.* at 1139–40 (emphasis added). The *Fisher* court correctly points out that the closest the Supreme Court has come to addressing the issue is in the case of *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1974). That case dealt with the issue of whether "a person arrested and held for trial under a prosecutor's information is constitutionally entitled to a judicial determination of probable cause for pretrial restraint of liberty." *Id.* at 105, 95 S.Ct. at 858. In *Gerstein*, the court did state, in passing, that a policeman's on-the-scene assessment of probable cause only justifies brief detention. Still, this was not the primary holding of the case and not a holding very clearly or thoroughly elaborated. The Third Circuit, too, has only tangentially discussed the right asserted here by plaintiffs. In *Patzig v. O'Neil*, 577 F.2d 841 (3d Cir.1978), the court implicitly assumed that *some* detentions might be unconstitutionally long, but it never clearly stated as much. (Indeed, the court cited approvingly district court cases holding that post-arrest, pre-arraignment detentions of 4–6 hours are reasonable, and even a case holding that an until-the-next morning detention, such as is presented here, is sufficiently prompt. *See Daly v. Pederson*, 278 F.Supp. 88, 95 (D.Minn.1967)). In sum, then, we are constrained to hold that the right to suffer only a "brief" post-arrest detention was not clearly established

at the time of the events with which we are here concerned.

Moreover, even if we were to *assume* that the right was a clearly established one, we have difficulty concluding that this right was one the defendant Breslin should have *known* he was violating by holding the plaintiffs overnight. The right to a "brief" detention only is a right that defies precise definition. Necessarily, what is "brief" varies from case to case, depending on the local conditions of any given court system. *See Fisher, supra.* Quite plausibly, the holding of plaintiffs overnight for approximately 12 hours is still within the intendment of the word "brief." Arguably, however, a 12 hour detention is not "brief." But the point is that given the inherent quantitative uncertainty of the right in question, we cannot say that Chief Breslin should have *known* he was violating a constitutional right. At best, all we can say is that Breslin might have *suspected* he was violating a right. *Harlow*, however, speaks in terms of knowledge, not mere suspicion.

The plaintiffs argue that *state* court rules requiring officers to release arrestees after booking on minor offenses indicate that Breslin knew or should have known that he was violating plaintiffs' rights. However, the rights conferred by state court rules are not *constitutional* in dimension and do not defeat a claim of § 1983 immunity. *See Davis v. Scherer*, —— U.S. ——, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984) (qualified immunity not forfeited by failure to comply with clear state regulation).

Accordingly, for the above reasons, Breslin is entitled to summary judgment on the § 1983 claim against him.

### 2. *False imprisonment claim.*

Chief Breslin did not *personally* imprison the plaintiffs. If he can be chargeable for false imprisonment, the basis for liability would be his failure to discontinue existing policies arguably in contravention of New Jersey Court Rule 4:3–1(b). The

**514**

defendant claims an immunity from suit on the basis of a provision of the New Jersey Tort Claims Act, N.J.S.A. 59:3–5, which reads:

> A public employee is not liable for an injury caused by … his failure to enforce any law.

Breslin argues that, at worst, he failed to enforce the New Jersey Court Rule, and that, if so, 59:3–5 confers upon him an absolute immunity. The plaintiffs contend that the relevant immunity section is N.J.S.A. 59:3–3, which reads:

> A public employee is not liable if he acts in good faith in the … enforcement of any law. Nothing in this section exonerates a public employee from liability for false arrest or false imprisonment.

This section only confers a good faith immunity (however New Jersey defines that term) and, in the case of false imprisonment, no immunity at all. The Superior Court has recently attempted to explicate the distinction between the sections. In *Marley v. Borough of Palmyra*, 193 N.J. Super. 271, 473 A.2d 554 (Law Div.1983), the court stated that § 3–3 is applicable only where an *act* has occurred, and an act requires an external manifestation of will. On the other hand, § 3–5 is applicable where there has been an injury occasioned by inaction, or "no act," and that section confers immunity even where the official has knowledge of the law. The plaintiffs state that Breslin's continuation of existing policies should be considered an "act," that § 3–3 applies, and that, under the second clause of the section (pertaining to false imprisonment), he is entitled to no immunity at all. However, the *Marley* court defines "act" much more narrowly and contemplates some sort of movement of the musculature. *Id.* at 297, 473 A.2d 554. Within such a definition, Breslin has not acted and has failed to enforce a law. Thus, § 3–5 applies, and Breslin is immune.

Accordingly, the defendant's summary judgment motion shall be granted in its entirety.