Patrick Michael O'BRIEN, Plaintiff,

v.

BOROUGH OF WOODBURY
HEIGHTS, et al.,
Defendants.

Carol Ann LIND, Plaintiff,

v.

BOROUGH OF WOODBURY
HEIGHTS, et al.,
Defendants.

Civ. A. Nos. 86–2819(SSB),
86–2820(SSB).

United States District Court,
D. New Jersey.

Feb. 11, 1988.

Albertson, Ward & McCaffrey by Thomas H. Ward, Thomas M. North, Woodbury, N.J., for plaintiffs.

White and Williams by Michael O. Kassak, Cherry Hill, N.J., for defendants.

## OPINION

BROTMAN, District Judge:

## I. INTRODUCTION

These consolidated civil rights actions arise out of the arrest and imprisonment of plaintiffs Patrick Michael O'Brien and Carol Ann Lind by the Borough of Woodbury Heights, the County of Gloucester and six individually named law enforcement officers employed by these entities. Plaintiffs bring their claims pursuant to 42 U.S.C. § 1983, alleging, *inter alia*, that defendants subjected them to unlawful detentions and strip/body cavity searches in violation of plaintiffs' constitutional rights. Plaintiffs also assert state law claims for false imprisonment and intentional infliction of emotional distress, as well as other additional state law claims (hereinafter referred to as "additional state law claims")[1], and seek punitive damages from the individual defendants.[2]

Presently before the court are the parties' cross-motions for summary judgment, Fed.R.Civ.P. 56, on the following issues:

(A) Whether defendants are liable to plaintiffs under Section 1983 for subjecting them to strip/body cavity searches;

(B) Whether defendants are liable under Section 1983 for the detentions of plaintiffs;

(C) Whether defendants are liable to plaintiffs under the laws of the State of New Jersey for false imprisonment. Defendants also move for summary judgment on the questions of:

(D) Whether defendants are liable to plaintiffs under the laws of the State of New Jersey for intentional infliction of emotional distress; and

(E) Whether the individual defendants are entitled to immunity on plaintiffs' additional state law claims under the New Jersey Tort Claims Act.

Finally, defendants move:

(F) to dismiss plaintiffs' claims for punitive damages against the individual defendants.

For the reasons set forth below, the motions of the parties are granted in part and denied in part.

## II. FACTUAL BACKGROUND

Patrick Michael O'Brien was arrested in the early morning of December 28, 1985 by the East Greenwich Police Department at the request of the Borough of Woodbury Heights Police Department. O'Brien's arrest followed an alleged altercation at Gallagher's Tavern, a bar in Woodbury Heights, New Jersey, during which plaintiff was involved in a fight with a Bruce Leap. Upon his arrest, O'Brien was taken to the Woodbury Hospital, where the officers who had arrested him turned plaintiff over to defendant Patrolman Dean Golding of the Woodbury Heights Police.

1. These claims are asserted in ¶ 20, subsections a-f, h, and j of plaintiffs' amended complaints.

2. The complaints in these actions also allege violations of plaintiffs' rights to due process, the establishment of reasonable bail and to be in-

formed of the nature and cause of an accusation, as well as numerous violations of the New Jersey State Constitution. These claims are not the subject of the present motions.

Defendant Golding first transported O'Brien to the Borough's police station, where plaintiff was fingerprinted and processed. Plaintiff was then taken to the Gloucester County Jail. At the jail, plaintiff was ordered to disrobe, subjected to a visual strip/body cavity search conducted by a male officer, defendant Mozell Danzby, and sprayed with a delousing agent. O'Brien was then placed in a jail cell, where he spent the night. At 10:00 A.M. the next morning, plaintiff was picked up at the jail by Walter Riley, Police Chief of the Woodbury Heights Police Department, and transported to the Borough's police station. At that time, George Johnson, the manager of Gallagher's Tavern, filled out a disorderly persons complaint against plaintiff. This complaint was subsequently dismissed due to Johnson's failure to appear at a later hearing.

On May 4, 1986, at approximately 12:30 A.M., Carol Ann Lind was arrested at Gallagher's Tavern by Patrolman Lindsay and Patrolman James Golding of the Woodbury Heights Police Department. This arrest followed an altercation at Gallagher's between Ms. Lind and a Mr. Selfridge. During this incident, Johnson, the bar manager, telephoned the police.

Lind was taken by the officers to the Gloucester County Jail, where plaintiff was ordered to disrobe, subjected to a visual strip/body cavity search conducted by a female officer, defendant Nicola Easter, showered, and sprayed with a delousing agent. Lind was then placed in a cell, where she spent the rest of the night.

At approximately 8:15 a.m. on May 4, 1986, Lind was transported to the Borough's police station, where George Johnson filled out a complaint against her for disorderly conduct. This complaint was subsequently dismissed due to Johnson's failure to appear in court.

No judicially authorized warrant was sought for the arrest or detention of either plaintiff. Defendants concede that both plaintiffs were detained pursuant to the custom and policy of the Woodbury Heights Police Department to detain individuals believed to pose a danger to themselves, to others or to property at the County jail for a period not to exceed twenty-four hours. Defendants also concede that Lind and O'Brien were subjected to the strip/body cavity search procedure pursuant to the policy of the Gloucester County Jail to conduct such searches on all arrestees prior to incarceration, regardless of the nature of the charges against them.

## III. DISCUSSION

The standard for granting summary judgment is a stringent one. Fed.R.Civ.P. 56(c) provides that summary judgment may be granted only when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Hersh v. Allen Prods. Co.*, 789 F.2d 230, 232 (3d Cir.1986); *Lang v. New York Life Insurance Co.*, 721 F.2d 118 (3d Cir. 1983). In deciding whether an issue of material fact does exist, the court is required to view all doubt in favor of the nonmoving party. *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 (3d Cir.1983), *cert. denied*, 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984); *Knoll v. Springfield Township School District*, 699 F.2d 137, 145 (3d Cir.1983); *Smith v. Pittsburgh Gage and Supply Co.*, 464 F.2d 870, 874 (3d Cir.1972). The threshold inquiry is whether there are genuine issues that properly can be resolved only be a finder of fact because they may reasonably be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 213 (1986). The Supreme Court has interpreted Fed.R. Civ.P. 56(c) as mandating:

> ... the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265, 273 (1986). Thus, if the plaintiff's evidence is merely "colorable" or is "not significantly probative," summary judgment may be granted.

*Anderson v. Liberty Lobby, Inc.*, 106 S.Ct. at 2511.

The court will first consider those issues arising under plaintiffs' Section 1983 claims.

(A) *Whether Defendants are Liable to Plaintiffs Under Section 1983 for Subjecting Them to Strip/Body Cavity Searches?*

■ It is the confessed policy of the Gloucester County Jail to conduct a visual strip/body cavity search on each arrestee who is brought to the jail for the purposes of incarceration, regardless of the offense with which the person is charged. Pursuant to this search procedure, prospective inmates are required to disrobe and to expose their body cavities to a visual inspection by an officer of the same sex as the person being searched.

Defendants move for summary judgment on those counts of the complaints that allege that plaintiffs' Fourth Amendment rights were violated when they were subjected to visual strip/body cavity searches at the Gloucester County Jail. Defendants argue that such searches are necessary to insure that weapons or contraband are not introduced into the facility. Plaintiffs cross-move for summary judgment, arguing that strip/body cavity searches are impermissible under the Fourth Amendment unless based on a reasonable suspicion of concealment. Because this court finds itself in total agreement with the predominating caselaw in this area, which has found blanket strip/body cavity search policies such as the one in force at the Gloucester County Jail to be insupportable and unconstitutional, plaintiffs' motion for summary judgment on this issue will be granted and defendants' corresponding motion will be denied.

### 1. The Unconstitutionality Of The Searches

■ In evaluating the permissibility of body cavity or strip searches of arrestees,

seven of the United States Circuit Courts of Appeals have held that such searches must be based on a "reasonable suspicion"[3] that an arrestee is concealing contraband or weapons. *See Weber v. Bell,* 804 F.2d 796 (2d Cir.1986), *cert denied sub nom County of Monroe v. Weber,* — U.S. ——, 107 S.Ct. 3263, 97 L.Ed.2d 762 (1987); *Jones v. Edwards,* 770 F.2d 739 (8th Cir. 1985); *Stewart v. County of Lubbock,* 767 F.2d 153 (5th Cir.1985), *cert. denied,* 475 U.S. 1066, 106 S.Ct. 1378, 89 L.Ed.2d 604; *Giles v. Ackerman,* 746 F.2d 614 (9th Cir. 1984), *cert. denied,* 471 U.S. 1053, 105 S.Ct. 2114, 85 L.Ed.2d 479; *Hill v. Bogans,* 735 F.2d 391 (10th Cir.1984); *Mary Beth G. v. City of Chicago,* 723 F.2d 1263 (7th Cir. 1983); *Logan v. Shealy,* 660 F.2d 1007 (4th Cir.1981), *cert. denied,* 455 U.S. 942, 102 S.Ct. 1435, 71 L.Ed.2d 653 (1982). And while the Third Circuit has yet to address the question, in a recent opinion issuing from this district, the Honorable Mitchell H. Cohen declared unconstitutional a blanket policy of the Camden County Jail which subjected all arrestees to indiscriminate strip/body cavity searches. *Davis v. City of Camden,* 657 F.Supp. 396 (D.N.J.1987).

Nonetheless, defendants contend, in the face of this overwhelming contrary authority, that the blanket strip/body cavity search policy of the Gloucester County Jail is a necessary and constitutional procedure. Defendants further argue that the case of *Davis v. City of Camden* was wrongly decided and is inconsistent with the Supreme Court's holding in *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1970). In *Bell v. Wolfish,* the Court upheld as constitutional a policy under which pretrial detainees were subjected to body cavity searches following contact visits.

Initially, it must be noted that the *Davis* decision is fully consistent with the seven court of appeals decisions which found strip and body cavity searches of arrestees unconstitutional when not supported by

---

**3.** Reasonable suspicion has been described as a less stringent standard than probable cause which requires a "particularized and objective basis for suspecting the particular person" of secreting weapons or contraband. *United States*

*v. Montoya De Hernandez,* 473 U.S. 531, 541–42, 105 S.Ct. 3304, 3311, 87 L.Ed.2d 381 (1985), quoting *United States v. Cortez,* 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981).

reasonable suspicion. Furthermore, all of these opinions were rendered after the Supreme Court's ruling in *Bell v. Wolfish.* Consequently, to the extent defendants argue that *Davis* is a misapplication of the holding in *Bell,* the defendants must necessarily make the same claim regarding the majority view among the circuits.[4]

More importantly, defendants' argument that the Supreme Court's decision in *Bell* justifies the search policy in question here is simply not persuasive. Indeed, the facts presented in the *Bell* case were quite different than those presently before the court. In *Bell,* the court upheld strip/body cavity searches of pre-trial detainees— "prisoners who had already been arraigned, had failed to make bail, and had presumably chosen to receive visitors and to enjoy physical contact with them." *Weber v. Dell,* 804 F.2d at 800. Furthermore, as the Supreme Court has noted, many pre-trial detainees are "awaiting trial for serious, violent offenses" and "have prior criminal convictions." *Block v. Rutherford,* 468 U.S. 576, 586, 104 S.Ct. 3227, 3233, 82 L.Ed. 2d 438 (1984).

By contrast, plaintiffs in the present case were arrested for petty disorderly offenses and subjected to the humiliation and degradation of a strip/body cavity search procedure prior to any determination by a neutral and detached magistrate that their arrest or continued detention was supported by probable cause. In fact, charges were not even officially filed against plaintiffs

until moments prior to their release. None of the officers involved in the searches of plaintiffs bore any suspicion, reasonable or otherwise, that either plaintiff was concealing a weapon or contraband at the time of the search, and indeed, no reasonable basis existed for such a suspicion, given the nature of the offense charged in each case.[5] Given these circumstances, the strip/body cavity searches of plaintiffs in this case were not only unconstitutional. They were senseless.

2. Whether The County Is Liable Under Section 1983 For The Unlawful Strip/Body Cavity Searches?

■ In *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court held that a municipality cannot be held liable under a theory of *respondeat superior* for the torts of its employees. *Id.* at 691, 98 S.Ct. at 2036. Nonetheless, the Court also held that "local government, like every other Section 1983 'person,' by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channel." *Id.* at 690–91, 98 S.Ct. at 2036.

Defendants in the present action concede that "it is the policy of the Gloucester County Jail to strip search all inmates regardless of the charge." *See* Defendants'

4. In arguing the constitutionality of the blanket search policy, defendants simply neglect to mention the seven circuit court opinions which declare searches such as the ones in question unconstitutional. Defendants do cite *Dufrin v. Spreen,* 712 F.2d 1084 (6th Cir.1983), a case in which the court upheld the body cavity search of an arrestee. However, in so holding, the Sixth Circuit expressly declined to address the issue of whether such a search was permissible when conducted on a person charged with a minor offense not commonly associated with weapons or contraband, since the plaintiff in *Dufrin* had been charged with a felony. Id. at 1087. Therefore, the *Dufrin* decision provides no support for defendants' position.

5. Several courts have noted that the nature of the offense for which a person is arrested may contribute to a reasonable suspicion that that

person might attempt to secrete a weapon or contraband on his or her person. As explained by the court in *Davis,*

... a blanket policy covering only persons charged with felonies or with misdemeanors involving weapons or contraband arguably is justifiable because it is based on a reasonable generalization: that persons charged with these offenses are liable to be concealing weapons or contraband.

657 F.Supp. at 400. As a corollary, federal courts have recognized that blanket strip/body cavity search policies which condone the searches of all arrestees, including those charged with minor offenses, are unconstitutional. *See Weber v. Dell,* 804 F.2d at 801 n. 6 (citing cases striking down strip searches of non-felony offenders where nature of offense charged did not give rise to a reasonable suspicion).

Briefs in Support of Motion for Summary Judgment and/or Partial Summary Judgment at p. 5. Therefore, the County is liable under Section 1983 for the unlawful strip/body cavity searches to which plaintiffs were subjected.

### 3. Whether The Borough Is Liable Under Section 1983 For The Unlawful Strip/Body Cavity Searches?

■ The record clearly indicates that the Borough had a policy, at the time plaintiffs were arrested, of bringing arrestees to the Gloucester County Jail. *See* Riley Deposition at pp. 38, 55. The record also establishes that the Borough was aware of the policy at the Gloucester County Jail of conducting strip/body cavity searches on all arrestees. *Id.* at p. 58. Consequently, the Borough is liable under Section 1983 for causing plaintiffs to be subjected to the unconstitutional searches. *See Black v. Stephens*, 662 F.2d 181, 189 (1981) *cert. denied*, 455 U.S. 1008, 102 S.Ct. 1646, 71 L.Ed.2d 876 (1982) (plaintiff in Section 1983 case must establish a "causal connection" between defendant's conduct and the constitutional deprivation suffered); *Sabo v. O'Bannon*, 586 F.Supp. 1132, 1143 (E.D.Pa. 1984) ("Of course, it is not necessary to prove that the official policy itself is unconstitutional. *Monell* requires only that the official policy cause the constitutional violation.").

### 4. Whether The Individual Defendants Are Liable Under Section 1983 For The Unlawful Strip/Body Cavity Searches?

■ The individual defendants, as government officials, are entitled to qualified immunity from liability for their discretionary acts, "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). In *Harlow*, the Supreme Court stated, "[o]n summary judgment, the judge appropriately may determine, not only the current applicable law, but whether that law was clearly established at the time an ac-

tion occurred." *Id.* at 818, 102 S.Ct. at 2738.

As the court noted in *Davis*, "[t]here is no general consensus on when the unconstitutionality of blanket strip search policies became 'clearly established.' *Weber v. Dell*, 804 F.2d 796, 803 (2d Cir.1986), *cert. denied sub nom County of Monroe v. Weber*, — U.S. —, 107 S.Ct. 3263, 97 L.Ed.2d 762 (1987) (clearly established in 1983); *Ward v. County of San Diego*, 791 F.2d 1329, 1333 (9th Cir.1986) (clearly established in 1981), *cert. denied sub nom Duffy v. Ward*, — U.S. —, 107 S.Ct. 3263, 97 L.Ed.2d 762 (1987) *with Fann v. City of Cleveland*, 616 F.Supp. 305, 314 (N.D.Ohio 1985) (not clearly established in 1983); *John Does 1–100 v. Ninneman*, 612 F.Supp. 1069, 1072 (D.Minn.1985) (not clearly established in 1984)." 657 F.Supp. at 401. In *Davis*, the court determined that the blanket strip search policy that was in place in May 1984 at the Camden County Jail, which called for the strip search of all inmates, was not "so clearly unconstitutional that the defendants reasonably should have known that they were obligated not to implement it." *Id.* at 401–02. In so holding, the court noted "the relatively recent vintage of most strip search cases," *id.*, and the fact that the Third Circuit Court of Appeals has yet to rule on whether blanket strip search policies are constitutional. Additionally, the *Davis* court pointed out that the policy at the Camden County Jail had been specifically mandated by a state regulation, N.J.A.C. § 10A:31–3.12(2) (1979), at the time the individual defendants in that case caused plaintiff to be subjected to an unconstitutional search.

■ This court believes that the immunity question presented in *Davis* is distinguishable from the present case. First, the earlier search in this case took place in December 1985; the later search occurring in May 1986. Consequently, the defendants in this action had a minimum of eighteen months more than the defendants in *Davis* to inform themselves of the prevailing caselaw outlawing the searches in question. More importantly, N.J.A.C. § 10A:31–3.12(2) (1979), the statute which

provided for a blanket strip search policy and which was in force at the time of the 1984 search in *Davis*, was amended in December 1985 to prohibit body cavity searches conducted on less than probable cause, and to require that an arrestee be given a reasonable opportunity to post bail before he or she is subjected to a strip search.

Under these circumstances, the court finds that the law prohibiting blanket strip/body cavity searches such as the ones conducted in this case was clearly established in December 1985 and May 1986 when those searches took place. As the Court noted in *Harlow*, "a reasonably competent public official should know the law governing his conduct." 457 U.S. at 819, 102 S.Ct. at 2738. Thus, it is held that the individual defendants named in this action are liable for the illegal searches to which plaintiffs were subjected.

### (B) *Whether the Detention of Plaintiffs Violated Their Rights Under the Fourth and Fourteenth Amendments?*

The parties do not dispute that it is "the custom and policy of the Woodbury Heights Police Department to detain individuals who are dangerous to themselves or to others for a period not to exceed twenty-four hours at the Gloucester County Jail." *See* Defendants' Brief at p. 4. Defendants contend that this policy is carried out pursuant to Rule 3:4–1 of the New Jersey Rules Governing Criminal Practice, which sets out the procedure to be followed

subsequent to an arrest[6]. Plaintiffs argue that the detention policy both on its face and as applied violates the terms of Rule 3:4–1 and the plaintiffs' rights under the Fourth and Fourteenth Amendments to be secure from unreasonable seizures.

Under Rule 3:4–1, when a person is arrested for a minor offense, the officer in charge of the police station to which the arrestee is taken shall, after completing the required post-arrest administrative procedures, issue a complaint-summons to the arrestee and "release that person in lieu of continued detention." R.3:4–1(c). However, the officer in charge has discretion not to release the arrestee if that officer determines that any one of certain conditions enumerated in subsection (d) of the rule are present. In that case, the officer is required to bring the arrestee before the nearest available committing judge "without unnecessary delay," for a probable cause determination. *Id.* If the judge then finds that there is probable cause to believe that the arrestee committed the offense charged and that any one of the section (d) conditions is present, that person shall be detained pursuant to a complaint-warrant. Correspondingly, if no probable cause is found or the judge determines that none of the section (d) conditions exist, the arrestee shall be issued a complaint-summons and released.

▬▬ It is clear from the plain language of this provision that the Borough's policy of detaining arrestees up to twenty-four hours upon a police officer's unreviewed

---

6. Subsection (c) of R.3:4–1 provides:

Whenever a law enforcement officer has effected an arrest without a warrant for an offense other than an offense enumerated in paragraph (b) hereof [felonies and crimes involving the possession or use of a firearm], the arrested person shall be taken to a police station where the officer in charge shall, after completion of all post-arrest identification procedures required by law, prepare a complaint-summons, issue it to the person arrested and release that person in lieu of continued detention. However, the officer has the discretion not to prepare a complaint summons if the officer determines that any of the conditions set forth in paragraph (d) exist. If the officer determines not to prepare a complaint summons, a complaint-warrant shall be

prepared forthwith and the person arrested shall be taken without unnecessary delay before the nearest available committing judge. If there is probable cause to believe that the defendant committed the offense, the judge, court clerk, or deputy clerk shall issue the complaint-warrant unless it is determined that none of the conditions set forth in paragraph (d) hereof exist in which case a complaint-summons shall be prepared, issued, and the person arrested shall be released....

Under Subsection (d) of R.3:4–1, one of the conditions in the presence of which an officer has discretion not to issue a complaint-summons is if "[t]he officer has reason to believe that the person is dangerous to himself, to others or to property...." R.3:4–1(d)(2).

determination that the person arrested poses a threat to himself, others or property violates Rule 3:4–1. Nonetheless, a violation of Rule 3:4–1 does not constitute a *per se* violation of a plaintiff's constitutional rights. As explained by the court in *Talbert v. Kelly*, 799 F.2d 62 (3d Cir.1986), "[i]f the procedure that a municipality chooses violates or is contrary to state law, but meets federal standards, we may not set it aside." *Id.* at 68. Furthermore, pursuant to this reasoning, an individual defendant's non-compliance with a state-mandated procedure does not in and of itself give rise to a claim cognizable under Section 1983.

 The provision in question, R.3:4–1, does, however, incorporate the Fourth Amendment's requirement that a judicial determination of probable cause be had "as a prerequisite to extended restraint of liberty following arrest." *Gerstein v. Pugh*, 420 U.S. 103, 114, 95 S.Ct. 854, 863, 43 L.Ed.2d 54 (1975). Under *Gerstein*, a detention following a warrantless arrest and prior to a probable cause hearing before a magistrate is reasonable, within the meaning of the Fourth Amendment, if it lasts only "for a brief period" necessary for the taking of "administrative steps incident to arrest." *Id.* at 114, 95 S.Ct. at 863. As a result, once defendants decided to detain plaintiffs, they had a constitutional obligation to seek a judicial determination of probable cause forthwith. *See Bernard v. City of Palo Alto*, 699 F.2d 1023, 1025 (9th Cir.1983) ("The arresting officer's determination of probable cause justifies only 'a brief period of detention to take the administrative steps incident to arrest.' ... Detention beyond that period requires a determination of probable cause by a neutral magistrate."); *Williams v. Ward*, 671 F.Supp. 225, 227 (S.D.N.Y.1987) ("[O]nce an arrest is effected, the necessity for detaining the suspect beyond a brief period of detention to take the administrative steps incident to an arrest evaporates.").

 What constitutes an unnecessarily long detention under *Gerstein* "must be determined on a case-by-case basis," according to the factual circumstances presented. *Moore v. Marketplace Restaurant, Inc.*, 754 F.2d 1336, 1351 (7th Cir. 1985); *see also Bernard*, 699 F.2d at 1025; *Sanders v. City of Houston*, 543 F.Supp. 694, 701 (S.D.Texas 1982), *aff'd*, 741 F.2d 1379 (5th Cir.1984). The record here does not contain sufficient undisputed facts to answer the question of whether plaintiffs were actually detained beyond a period reasonably required to take necessary administrative steps. In so stating, the court notes that detention of plaintiffs on the basis of a belief that they posed a threat to themselves, others or property is not a reasonable administrative step within the meaning of *Gerstein*. In fact, such extended detention pursuant to the exercise of unbridled discretion on the part of a law enforcement officer is precisely the type of harm that the *Gerstein* holding seeks to avoid. 420 U.S. at 116–119, 95 S.Ct. at 864–65. Nevertheless, the record leaves unanswered several pertinent questions: i.e., precisely what administrative steps were taken regarding the plaintiffs' arrests; whether plaintiffs were detained longer than necessary to carry out such steps and to present plaintiffs to a magistrate for a probable cause determination; and whether a magistrate was available during plaintiffs' period of incarceration. Thus, the parties cross-motions for summary judgment on the issue of the constitutionality of plaintiffs' detention are denied.[7]

(C) *Whether Defendants Are Liable To Plaintiffs Under The Laws Of The State Of New Jersey For False Imprisonment?*

Plaintiffs move for summary judgment on those claims in their complaints alleging

---

**7.** In support of their motion for summary judgment on plaintiffs' claims for unconstitutional detention, defendants' argue only the constitutionality of the Borough's admitted detention policy. Consequently, under the rule of *Monell,* the Borough would be liable for any deprivations of plaintiffs' constitutional rights caused by the Borough's detention policy.

With regard to the County and the individually-named defendants, *no arguments are proffered in support of granting these defendants summary judgment in the event the detention of plaintiffs is found to have been unconstitutional. Therefore, the court will not address the issue at this time.*

false arrest and false imprisonment. Defendants cross-move for judgment in their favor on two grounds—(1) that the arrest and detention of plaintiffs was legal under New Jersey law; and (2) that even if an illegal imprisonment occurred, defendants are immune from liability for such an occurrence.

Preliminarily, the court notes that "false arrest and false imprisonment are not separate torts; they are different names for the same tort." *Price v. Phillips*, 90 N.J.Super. 480, 485, 218 A.2d 167 (App.Div.1966). *See also Roth v. Golden Nugget Casino/Hotel, Inc.*, 576 F.Supp. 262, 265 (1983). Consequently, plaintiffs' claims are more accurately characterized as alleging two instances of false imprisonment, those being the initial arrest of plaintiffs and the subsequent detention of plaintiffs pursuant to the Borough's detention policy. That having been said, the court will next consider whether, on the facts presented, the tort of false imprisonment was committed.

"The tort of false imprisonment is established upon showing any 'unlawful restraint upon a man's freedom of locomotion.'" *Bartolo v. Boardwalk Regency Hotel Casino, Inc.*, 185 N.J.Super. 534, 537, 449 A.2d 1339 (Law Div.1982). Furthermore, "it has long been established that under New Jersey law a public official may be held liable for false arrest or imprisonment where he has acted outside his authority." *Skevofilax v. Quigley*, 586 F.Supp. 532, 545 (D.N.J.1984).

### 1. The Arrests

■ In the present case, plaintiffs argue that they were unlawfully arrested as disorderly persons without a warrant and for conduct which occurred outside the presence of the arresting officers. In so arguing, plaintiffs cite N.J.S.A. § 2A:169–3, which states:

Whenever an offense is committed in his presence, any constable or police officer shall, and any other person may, apprehend without warrant or process any disorderly person, and take him before any magistrate of the county where apprehended.

*Id.* This provision has been interpreted as requiring that arrests for offenses of a lower grade than misdemeanors which are committed outside the presence of an arresting officer be made pursuant to a warrant. *Roth*, 576 F.Supp. at 267; *State v. Morse*, 54 N.J. 32, 252 A.2d 723 (1969).

Because the warrantless arrests in the case at bar were for disorderly persons offenses committed outside the presence of the arresting officers, plaintiffs have established the elements of false imprisonment arising out of those arrests.

### a) The Liability Of The Arresting Officers

■ In the case of plaintiff Lind, her initial arrest was executed by Patrolman James Golding and a Patrolman Lindsay. Patrolman Lindsay is not a named defendant in this action.

Regarding Patrolman James Golding, defendants argue that he is entitled to immunity pursuant to section 59:3–2(a) of the New Jersey Tort Claims Act. That provision states, "[a] public employee is not liable for any injury resulting from the exercise of judgment, or discretion vested in him." N.J.S.A. § 59:3–2(a). However, the applicability of Section 59:3–2(a) is superseded in this case by N.J.S.A. § 59:3–3 which states,

A public employee is not liable if he acts in good faith in the execution or enforcement of any law. *Nothing in this section exonerates a public employee from liability for false arrest or false imprisonment.*

*Id.* (emphasis added). As the court explained in *Marley v. Borough of Palmyra*, 193 N.J.Super. 271, 473 A.2d 554 (Law Div. 1983), "[t]he discretionary/ministerial distinction [of 59:3–2(a)] ... does not apply when express immunities are provided." *Id.* at 289, 473 A.2d 554, *citing Malloy v. State*, 76 N.J. 515, 521, 388 A.2d 622 (1978); *Bosch v. Hain*, 184 N.J.Super. 204, 445 A.2d 465 (Law Div.1982). Therefore, the court must apply N.J.S.A. § 59:3–3, which expressly states that no immunity is available for public employees for claims of false arrest or false imprisonment. *See*

*Anela v. City of Wildwood,* 595 F.Supp. 511, 514 (D.N.J.1984) *rev'd on other grounds* 790 F.2d 1063 (3d Cir.1986). As a result, defendant James Golding is liable to plaintiff Lind for her false imprisonment.

The initial arrest of plaintiff O'Brien was accomplished by officers of the East Greenwich Police Department, who are not parties to this action. Custody of O'Brien was subsequently turned over to Patrolman Dean Golding, who brought plaintiff to the Woodbury Height Police Station.

█ Despite the fact that he did not participate in the original apprehension of O'Brien, Patrolman Dean Golding may be liable to plaintiff if he did take affirmative steps to secure plaintiff's imprisonment. Keeton, *Prosser and Keeton on Torts,* § 11 at 52 (5th Ed.1984). Furthermore, Patrolman Dean Golding need not have known or suspected that the initial arrest of O'Brien was unlawful. "Malice or bad faith is not an element of this cause of action [false imprisonment] and need not be proven by the plaintiff." *Roth,* 576 F.Supp. at 265. Nor is this defendant entitled to immunity pursuant to N.J.S.A. 59:3–3.

█ Plaintiff O'Brien's complaint alleges that his arrest took place at the direction of Dean Golding. However, nothing in the record before the court indicates what role, if any, this patrolman played in the warrantless arrest of O'Brien. Thus, summary judgment cannot be entered at this time on the issue of Patrolman Dean Golding's liability to O'Brien for false imprisonment.

b) The Liability Of The Borough

█ Section 59:2–2 of the New Jersey Tort Claims Act imposes liability on public entities under a theory of *respondeat superior* for the torts of their employees. That section provides in pertinent part:

A public entity is liable for injury proximately caused by an act or omission of a public employee within the scope of his employment in the same manner and to the same extent as a private individual under like circumstances.

N.J.S.A. 59:2–2(a). As applied to the case at bar, Section 59:2–2 renders the Borough of Woodbury Heights liable for the tort of false imprisonment committed by the Borough's employees.

c) The Detentions

█ Plaintiffs also assert claims for false imprisonment arising out of their incarceration pursuant to the Borough's policy of detention discussed at section (B) *supra.* Specifically, plaintiffs argue that their detentions were in violation of Rule 3:4–1 of the New Jersey Rules Governing Criminal Practice.

As stated in section (B), the factual record before the court is insufficient to allow for the entry of summary judgment for plaintiffs or defendants on the issue of whether plaintiffs' actual periods of detention, following warrantless arrests and prior to probable cause determinations by a magistrate, were longer than that permitted by either the Fourth Amendment or Rule 3:4–1.

In light of the foregoing, the motion of defendant James Golding for summary judgment on plaintiff Lind's false imprisonment claim is denied, and plaintiff Lind's corresponding cross-motion for summary judgment against James Golding and the Borough is granted. Furthermore, the motions of the remaining defendants for summary judgment on plaintiffs' false imprisonment claims are denied, as are plaintiffs' cross-motions for summary judgment against those remaining defendants.

(D) *Whether Defendants Are Liable To Plaintiffs Under The Laws Of The State Of New Jersey For Intentional Infliction Of Emotional Distress?*

█ In order to establish a claim for the tort of intentional infliction of emotional distress in New Jersey, a plaintiff must show that defendant "by extreme and outrageous conduct intentionally or recklessly cause[d] severe emotional distress to [plaintiff].…" *Hume v. Bayer,* 178 N.J.Super. 310, 315, 428 A.2d 966 (Law Div.1981), *quoting Restatement, Torts 2d* § 46. This tort has been described as encompassing

conduct that is "so extreme and outrageous 'as to go beyond all possible bounds of decency, and be regarded as atrocious and utterly intolerable in a civilized community.'" *Hafner v. Hafner*, 135 N.J.Super 328, 333–34, 343 A.2d 166 (Law Div.1965), *quoting Restatement Torts, 2d § 46*, comment (d) at 73. Defendants, in moving for summary judgment on this claim, argue that the conduct of none of the defendants meets this definition.

The court is hampered by the fact that plaintiffs do not specify in their complaint or moving papers precisely what conduct they seek recovery for on an emotional distress basis. Nonetheless, on the record presented, the only conduct alleged by plaintiffs which arguably approaches behavior that goes "beyond all possible bounds of decency" is the strip/body cavity search procedure to which plaintiffs were subjected. The court believes that a jury could find, given the facts of this case, that the searches conducted on plaintiffs, after they were arrested without a warrant for petty disorderly persons offenses, rose to the level of intentional infliction of emotional distress. Therefore, the defendants' motions for summary judgment on this claim will be denied.[8]

### (E) Whether Defendants Are Entitled To Immunity On Plaintiffs' Additional State Law Claims Under The New Jersey Tort Claims Act?

Defendants move for summary judgment on plaintiffs additional state law claims, arguing that the individual defendants are immune from claims arising out of discretionary activities, N.J.S.A. § 59:3–2, or the good faith execution or enforcement of any law, N.J.S.A. § 59:3–3. Defendants further contend that the Borough and the

County vicariously assume the immunity of their employees by virtue of N.J.S.A. § 59:2–2, which provides, "[a] public entity is not liable for an injury resulting from an act or omission of a public employee where the public employee is not liable." *Id.*

Defendants' argument ignores the fact that § 59:3–3 provides only a good faith immunity for claims arising out of law enforcement activity. As explained earlier in section (C)1(a) *supra*, this provision controls the question of defendants' immunity in this case. As a result, whether the individual defendants acted in good faith with respect to their conduct in this matter is a material fact which clearly is in dispute.[9]

### (F) Whether the Individual Defendants Can Be Held Liable to Plaintiffs for Punitive Damages?

Plaintiffs seek punitive damages from the individual defendants.[10] The Supreme Court has held "that reckless or callous disregard for the plaintiff's rights, as well as intentional violations of federal law, should be sufficient to trigger a jury's consideration of the appropriateness of punitive damages." *Smith v. Wade*, 461 U.S. 30, 51, 103 S.Ct. 1625, 1637, 75 L.Ed.2d 632 (1983). Because the question of the individual defendants' good faith and motives in the present case raises a material issue of disputed fact, the motion by defendants to dismiss the punitive damages claims asserted against the individual defendants is denied.

### (G) Conclusion

For the reasons outlined in the foregoing opinion, the court will grant plaintiffs' mo-

---

**8.** As explained in section (E) *infra*, a public employee who engaged in conduct which would constitute the intentional infliction of emotional distress would not be entitled to immunity under the New Jersey Tort Claims Act.

**9.** Plaintiffs also cite N.J.S.A. § 59:3–14, which also renders the intent and motive of the individual defendants a material issue of fact. That section provides in pertinent part:
Nothing in this act shall exonerate a public employee from liability if it is established that

his conduct was outside the scope of his employment or constituted a crime, actual fraud, actual malice or willful misconduct.
*Id.*

**10.** Plaintiffs concede that they are not entitled to punitive damages from the Borough or the County under the Supreme Court's holding in *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981).

tion for summary judgment as to defendants' liability for the unconstitutional strip/body cavity searches which were conducted on plaintiffs, and will deny defendants' corresponding motion for summary judgment on this issue. The court will also deny the motions of both parties on plaintiffs' Section 1983 claims for unconstitutional detention. Additionally, the court grants plaintiff Lind's motion for summary judgment on her false imprisonment claim against Patrolman James Golding and the Borough, and denies James Golding and the Borough's motions for summary judgment on that claim. The court also denies the parties' motions for summary judgment on plaintiffs' false imprisonment claims against the County and defendants Dean Golding, Walter Riley, George Small, Mozell Danzby and Nicola Easter. Finally, defendants' motions for summary judgment on plaintiffs' claims for intentional infliction of emotional distress and plaintiffs' additional state law claims are denied, as is defendants' motion to dismiss plaintiffs' claims for punitive damages against the individual defendants.

An appropriate order will be entered.

### ORDER

This matter having been brought before the court; and

The court having considered the submissions of the parties; and

For the reasons stated in the court's opinion filed this date,

IT IS on this 11th day of February, 1988, hereby

ORDERED:

1) Plaintiffs' motions for summary judgment on their claims under 42 U.S.C. § 1983 arising out of the strip/body cavity searches are GRANTED;

2) Defendants' motions for summary judgment on plaintiffs' claims under 42 U.S.C. § 1983 arising out of the strip/body cavity searches are DENIED;

3) The motions of the parties for summary judgment on plaintiffs' claims under 42 U.S.C. § 1983 for unconstitutional detention are DENIED;

4) Plaintiff Lind's motion for summary judgment on her false imprisonment claim against defendants James Golding and the Borough of Woodbury Heights is GRANTED;

5) Defendants James Golding and the Borough of Woodbury Heights' motion for summary judgment on plaintiff Lind's claim for false imprisonment is DENIED;

6) The motions of plaintiffs Lind and O'Brien and defendants the County of Gloucester, Dean Golding, Walter Riley, George Small, Mozell Danzby and Nicola Easter for summary judgment on plaintiffs' false imprisonment claims against these defendants are DENIED;

7) Defendants' motion for summary judgment on plaintiffs' claims for intentional infliction of emotional distress are DENIED;

8) Defendants' motions for summary judgment on those state claims asserted in ¶ 20, subsections a-f, h, and j of plaintiffs' amended complaints are DENIED; and

9) The motions of defendants Walter Riley, Dean Golding, James Golding, George Small, Mozell Danzby and Nicola Easter to dismiss plaintiffs' claims for punitive damages against the individually named defendants are DENIED.

No costs.